### GOVNOR PEACE v. STATE.

No. 2221. Decided January 29, 1913.

**Theft—Insufficiency of the Evidence.**

Where, upon trial of theft, the evidence did not show that the defendant had in his possession any of the alleged stolen property or that he had ever taken same, and the property recovered was never identified as being that alleged to have been stolen, the conviction could not be sustained.

Appeal from the County Court of Tarrant. Tried below before the Hon. R. E. Bratton.

Appeal from a conviction of theft; penalty, a fine of $50 and thirty days confinement in the county jail.

The opinion states the case.

*Martin & Smith,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The evidence in substance is that Monnig, the alleged owner, was in the mercantile business in Fort Worth and was in full control of the mercantile establishment and had given appellant or no one else any authority to take any clothing from the establishment. Appellant was charged with fraudulently taking a suit of clothes of the value of $12. Appellant was in Monnig's employ. The witness said he knew nothing of any clothes having been stolen from him. The witness knew nothing of the matter one way or the other. Walker testified that he was in the employ of Monnig; that on Friday before the Wednesday night appellant was charged with the offense, he noticed him and another negro named Smith together a number of times which aroused his suspicion; that on the day appellant was charged with the offense a little Mexican had found a suit of clothes in a box on the lot leased by Mr. Monnig

back of his store; witness and Mr. Wandry, another employe of Monnig, agreed to watch and see if appellant would come and get the clothes; that about 7:30 that evening he was standing in the third story window of the store and saw defendant and Smith come into the alley back of the store; that they had a lunch in a little bundle and a bucket of beer; that he saw defendant go to one of the boxes in the alley and shove one box off another and fumble around a while and then take out a bundle wrapped in brown paper and give it to Smith; appellant then came right under the window at which witness was standing and placed the bundle between himself and Smith; that they then sat down and ate their lunch; that he also saw four white men sitting down eating a lunch about forty feet away from where these negroes were eating. That after finishing their lunch Smith picked up the bundle and walked to the box out of which the bundle was taken and tore the paper off, laid the clothes over his arm, and defendant went to the end of the alley and motioned to Smith; that defendant then went across the street towards a saloon on the opposite side of the street, and Smith followed to the end of the alley and turned east along 12th street; at this time witness ran down stairs and tried to get out of the store to head them off, but Wandry had gone after a lunch and some beer for himself and witness, and had locked the door with a Yale lock and witness could not get out; that when Wandry came back they went in pursuit of the negroes; that they saw defendant and when they caught sight of him he went into a saloon and they followed him; that witness left appellant in charge of Wandry while he went in pursuit of the other negro, Smith, but failed to find him; that when he returned to where Wandry and defendant were, Wandry made the remark that defeindant would go and get the suit if they would let him go? "But I said I would not stand for this, but that if he would bring back all the suits it would be all right. Defendant denied knowing anything about any other suits." He says, "I saw them come in the alley and at that time they had no bundle except the small bundle containing their lunch. The next morning I searched the boxes and found a suit of Monnig's clothes, in the same box I saw them take the bundle out of." William Smith testified that he was a second-hand dealer about a block and a half from Monnig's store, and on Wednesday evening about 7:30 or 8 o'clock, Charley Smith came to his store with a suit of clothes,—a dark blue or black suit, and offered to sell it to him for $7.50; that he declined to buy, Smith went away and he saw no more of him or the clothes. City Detective Bell testified that after receiving a telephone call about 7:30 p. m. he went to where Wandry and Walker were holding defendant, put him under arrest, took him to the City Hall. The next day he arrested Charley Smith. The defendant testified that he had been living in Forth Worth ten or twelve years; that he had been working for Mr. Monnig the past six weeks; that he had never been arrested for burglary, or any other offense

prior to this arrest and no charge had even been made against him; that he knew Smith and had known him six months; that he lived near him. He said, ''He was not the negro who ate lunch with me as stated by Mr. Walker on the day I was arrested charged with this offense. On this day after I was through with my work I met a negro on the 12th street alongside of Durritt-Winter's store, this is just back of Monnig's, Monnig's fronting on Main street and Durritts fronting on Hudson street just west of Monnig's. At the time I met him he had a large bundle wrapped in brown paper in his arms, and he re-marked that if we had a lunch and a bucket of beer we would be fixed. He furnished the money and I went around on Houston street and bought some fish and then went across 12th street to a saloon and bor-rowed a bucket and bought some beer and came back to where he was standing.'' This was the same place where defendant first met him; that they then went into the alley back of Monnig's store to eat the lunch and drink the beer; that this negro placed the bundle by his side while they ate. He says, ''I did not take any clothes out of Mon-nig's store; I did not take any clothes out of the boxes back of the store. I did not take the bundle out of the box as stated by Walker, nor did this negro that was with me. He took the bundle with him when he went into the alley and took the same bundle with him to a trash box at the end of the alley, and after I passed him I saw him tear the paper off and throw it into the trash box, and then he threw the clothes across his arm and followed me out and went east on 12th street to Main, and the last I saw of him he turned the corner going south on Main street that would lead him right in front of Monnig's store. I told all this to Wandry and Walker when they held me in the saloon. Wandry wanted me to go and get this suit of clothes and I told him that if I knew where it was I would go and get it, but that I only knew this negro by sight and did not know his name nor where he lived. I did not tell anyone that if they would let me go I would go and get the clothes. I told them that if they would let me go I would go and try to find them for them. I denied knowing of any other clothes. * * * I did not know that Charley Smith was charged with the same offense until after I got out of jail on bond in this case.'' This is the case as made by this record. This evidence is not sufficient to justify this conviction. It is not shown that appellant had any of Monnig's clothes or that he ever took any of Monnig's clothes. The clothes that Walker mentioned that was taken away by Charley Smith was never identified as being the property of Monnig or anybody else,—not even shown to have been stolen.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*