2002 OK 44

**RURAL WATER AND SEWER DISTRICT NO. 4, a Non-profit Corporation, Appellant,**

v.

**Wayne COPPAGE, an individual, City of Coweta, a Municipal Corporation and Wagoner County Board of County Commissioners, Appellees.**

No. 96,679.

Supreme Court of Oklahoma.

May 21, 2002.

Marjorie L. McCullough, White, Coffey, Galt & Fite, P.C., Oklahoma City, Oklahoma, for appellant.

H. Duane Riffe, Broken Arrow, Oklahoma, for appellant.

Ted L. Moore, Broken Arrow, Oklahoma, for appellee, Wayne Coppage.

David L. Weatherford, Birmingham, Morley, Weatherford & Priore, P.A., Tulsa, Oklahoma, for appellee, City of Coweta.

Jerry S. Moore, Assistant District Attorney, Tahlequah, Oklahoma, for appellee, Wagoner County Board of County Commissioners.

Diane Pedicord, Sue Ann Nicely, Oklahoma City, Oklahoma, for Amicus Curiae Oklahoma Municipal League.

Jay M. Galt, White, Coffey, Galt & Fite, P.C., Oklahoma City, Oklahoma, for Amicus Curiae Oklahoma Rural Water Association.

HODGES, J.

¶ 1 This appeal raises essentially two issues: 1) Did the trial court err in finding that the Board of County Commissioners of Wagoner County met the requirements of title 82, section 1324.21, of the Oklahoma Statutes when it released and separated a tract of land from Rural Water and Sewer District No. 4? 2) Does the collateral protection provision found in title 82, section 1085.36, limit the County Commissioners' authority to release and separate a tract of land from Rural Water and Sewer District No.4 and prohibit the City of Coweta from providing water and sewer services in order to develop the tract? This Court holds that the tract was properly released and separated from the Water District and that section 1085.36 does not limit the County Commissioners' authority to release and separate the tract of land, nor does it prohibit the City of Coweta from providing water and sewer services to the tract under development.

¶ 2 This dispute concerns water and sewer services to a 90 acre tract of land (Disputed Area) which was located within the geographical boundaries of Rural Water and Sewer District No. 4 (the Water District) and within the municipal limits of the City of Coweta. The Disputed Area had been in the family of Wayne Coppage since before statehood. The Water District provided water service to a residence on the property from 1967 until 1988. Since that time, however, it has provided no service to the Disputed Area.

¶ 3 In 1992, the Water District executed a loan agreement with the Oklahoma Water Resources Board whereby it borrowed six million dollars from the Water Resources Fund to construct a water treatment plant, install a treated water trunk line throughout the Water District's system, and refinanced its outstanding balance from an earlier project. As collateral, the Water District mortgaged its assets and pledged its present and future revenues. The term of the loan has not expired.

¶ 4 As early as 1995 or 1996, Coppage began negotiations with the City of Coweta to jointly develop a portion of the Dispute Area. In 2000, Coppage and the City executed a development agreement whereby Coppage donated approximately three and one half acres to the City for an industrial site, gave the City an option to purchase another seven and one half acres, and set aside ten acres for retention ponds. The City agreed to provide water and sewer services and build an industrial access road. It began construction of water and sewer lines late in 2000.

¶ 5 On February 5, 2001, the Board of County Commissioners of Wagoner County released and separated the Disputed Area from the Water District. The Water District filed its "Petition for Appeal and Request for Temporary Restraining Order, Temporary Injunction and Permanent Injunction" in the District Court on February 20, 2001. The trial court conducted a *de novo* review of the County Commissioners' actions and upheld its decision to release and separate the Disputed Area. The request for injunctive relief was denied. The water District brought this appeal.

I. The District Court did not err in determining that the requirements of title 82, section 1324.21, were met when the Board of County Commissioners released and separated the Disputed Area from the Water District.

¶ 6 Section 1324.21 [1] of title 82 provides the procedure for releasing and sepa-

1. Section 1324.21 provides:
   In the event that landowners within a district desire to withdraw from such district, fifty-one percent (51%) of the affected landowners or the board of directors by resolution may petition the county commissioners to release those

lands from the district. The petition shall describe by section or fraction thereof and by township and range the lands affected. After a finding that the granting of the petition is to the best interests of the affected landowners and the district, the board of county commis-

rating lands from a rural water district. Fifty-one percent of affected landowners may petition the County Commissioners for such action. The County Commissioners may grant the petition upon a finding that the release and separation is in "the best interests of the affected landowners and the district." The Board of County Commissioners is to memorialize its decision by issuing "a certificate that the lands involved are released and separated from the district."

¶ 7 The record demonstrates that the Board of County Commissioners issued a certificate releasing and separating the Disputed Area from the Water District "upon a finding that said release was in the best interests of the affected landowners and the district." The Water District appealed the decision pursuant to section 431 of title 19 which provides: "From all decisions of the board of commissioners, upon matters properly before them, there shall be allowed an appeal to the district court by any persons aggrieved...." Section 434 provides that "[a]ll appeals thus taken to the district court shall be ... heard and determined *de novo.*"

¶ 8 The District Court heard evidence and arguments. It upheld the County Commissioners' decision to release and separate the Disputed Area finding:

a. The rural water district presently has no customers that it is serving in the de-

annexed territory and will experience no current loss of revenues by the de-annexation;

b. The rural water district will be out no expenses for the installation of either water or forced sewer to service the subject property; and

c. The landowners currently have services [from the City of Coweta] to the subject property in the form of a gravity flow sewer system as well as water.

¶ 9 The Water District does not assert, nor does a review of the record reveal, that these findings are factually incorrect or that they are unsupported by the evidence. Rather, the Water District merely disagrees with the holding that the County Commissioners were correct in determining that release and separation of the Disputed Area was in the best interests of the Water District and the landowners. This Court finds neither error nor abuse of discretion in this regard.

II. Section 1085.36 of title 82 does not limit the County Commissioners' authority to release and separate the Disputed Area from the Water District nor does it prohibit the City of Coweta from providing water and sewer services to the Disputed Area.

¶ 10 Section 1085.36[2] 1) authorizes loans from the Water Resources Fund to

---

sioners shall issue a certificate stating that the lands involved are released and separated from the district. Full minutes of the hearing shall be entered in the journal of the board of county commissioners and the certificate shall be delivered to the secretary of the district who shall, within thirty (30) days, cause the records of the district to be amended to exclude the lands affected. Notice shall be given, as provided in Section 1324.5 of this title, of the filing of a petition for release of lands as provided herein, fixing the time and place of hearing, and a copy of said notice shall be sent by certified mail to the chairman of the board of directors of the district in which the said lands are located.

Okla.Stat. tit. 82, § 1324.21 (2001).

**2.** The entire text of Section 1085.36 provides:

Whenever any municipality, public trust, rural water or sewer district or any other eligible entity proposes to acquire or construct a project and/or refinance any indebtedness originally incurred to acquire or construct a project, the Board is hereby authorized to advance

to the municipality, public trust, rural water district or other eligible entity or combination thereof sufficient funds for such purposes. Such loans by the Board shall be made pursuant to notes, bonds, revenue bonds or other appropriate form of evidence of indebtedness to the Board by the municipality, public trust, rural water district or other eligible entity. The interest rate and loan term shall be determined by the Board, provided, however, that the interest rate for loans made to rural water or sewer districts, created and existing under the provisions of Section 1324.1 et seq. of this title, for the purposes of acquiring or constructing a project and/or refinancing any indebtedness originally incurred to acquire or construct a project, shall not exceed fourteen percent (14%) per annum. As security, the Board may take a mortgage on the entire project, and a pledge of the revenues derived from the operation thereof or such other revenues as may be pledged by the applicant for such purposes. The Board, in its discretion, may defer the principal or an installment on such loans but the total cumulating time such payment

rural water districts and other entities, 2) sets the maximum interest rate, 3) permits the borrowing entity to mortgage its assets and pledge its revenues to secure the loan, and 4) provides for protection of the pledged revenues. The effect of the collateral protection provision is at issue. It provides:

> After a loan or other financial assistance is obtained under Sections 1085.31 through 1085.65 of this title, and during the term of such loan or other financial assistance, no person, other than the eligible entity obtaining the financial assistance, shall be authorized to provide services of the type relied on for security of the loan or other financial assistance to customers of the portion of the system that is identified in the loan documents as collateral for the loan and either (1) in existence at the time of the loan or other financial assistance or (2) financed by the loan or other financial assistance.

The provision prohibits any person other than the borrower from providing the same services that comprise the security for the loan to "customers of the portion of the system" that is (a) identified as collateral and (b) either (1) in existence at the time of the loan or (2) financed by the loan. Thus, it presents a loan security scheme which protects revenues from customers of the portion of the system financed.

¶ 11 The Water District argues that section 1085.36, viewed in conjunction with its 1992 loan agreement, prevents the release and separation of the Disputed Area from the Water District and prevents the City of Coweta from providing it with water and sewer services. The Water District notes that, in the loan agreement, it pledged all its present and future revenues and mortgaged all its assets. It also notes that the loan agreement provides: "To the extent authorized by the laws of the State, prospective users of the System shall be required to

connect thereto." It reasons that the collateral protection afforded by section 1085.36 extends not only to revenues from existing customers, but revenues which may be received from potential customers within its geographical boundaries. It concludes that the Legislature intended to protect its "growth area" by enacting section 1085.36 and that release and separation of the Disputed Area from the Water District and service to the Disputed Area by the City of Coweta are prohibited. The Water District's conclusion is erroneous.

■ ¶ 12 The scope of the collateral protection afforded by the Legislature is revenues from "customers" of the portion of the system being financed. Although the Water District mortgaged its entire system, there were *no customers in the Disputed Area* at the time it was released and separated. No customers were receiving water or sewer services and no customer had received any service since September 13, 1988. The text of the provision offers no suggestion that the Legislature intended to protect potential revenues from potential customers who could be provided services in the future. The provision appears intended to prevent a raid on established customers of the borrowing entity who are served by the financed portion of the system. Because there were no customers in the Disputed Area, section 1085.36 did not prevent its release and separation from the Water District.

¶ 13 The Water District is asking this Court to apply collateral protection based upon its geographical boundaries. The Water District's proposed territorial approach to application of section 1085.36 would not, however, be consistent with the public policy of encouraging and promoting the development of water and sewer facilities. Okla.Stat. tit. 82, § 1085.31 (2001). It would limit County Commissioners' ability to release and separate areas from a water district even when it

may be deferred shall not exceed five (5) years. After a loan or other financial assistance is obtained under Sections 1085.31 through 1085.65 of this title, and during the term of such loan or other financial assistance, no person, other than the eligible entity obtaining the financial assistance, shall be authorized to provide services of the type relied on for security

of the loan or other financial assistance to customers of the portion of the system that is identified in the loan documents as collateral for the loan and either (1) in existence at the time of the loan or other financial assistance or (2) financed by the loan or other financial assistance.

Okla.Stat. tit. 82, § 1085.36 (2001).

was in the best interests of the landowners and the water district to do so. Additionally, a territorial approach would impose provisions of a water district's loan agreement with the Water Resources Board on non-customer landowners who are not parties to the contract. Finally, such an approach would result in the granting of an exclusive right to provide water and sewer services within the geographical boundaries of a water district in contravention of Article V, section 51, of the Oklahoma Constitution and this Court's holding in *Comanche County Rural Water District No. 1 v. City of Lawton,* 501 P.2d 490 (Okla.1972).

¶ 14 In *City of Lawton,* this Court rejected the argument that a water district had an exclusive franchise for the operation of a water distribution system within its geographical boundaries thus preventing a neighboring city from selling water within those boundaries. The argument was rejected despite the fact that a substantial portion of the water district's funding came from a Farmers Home Administration loan. Under title 7, section 1926(b) of the United States Code,[3] services "shall not be curtailed or limited ... by the granting of any private franchise for similar services within such area during the term of such loan...." This Court held that under Article 5, section 51, of the Oklahoma Constitution the Oklahoma Legislature was without power to grant an exclusive franchise to a water district. *City of Lawton,* 501 P.2d at 493. Further, the constitutional prohibition could not be evaded by entering into a contract with the Farmers Home Administration. *Id.*

¶ 15 The same constitutional authority and result apply in this matter. As in *City of Lawton,* "we will not ascribe to our Legislature an intention to violate Art. 5, § 51, of the Oklahoma Constitution." *Id.* Section 1085.36 does not give the Water District an exclusive franchise within its geographical boundaries.

TRIAL COURT AFFIRMED.

HARGRAVE, C.J., WATT, V.C.J., LAVENDER, OPALA, SUMMERS, BOUDREAU, WINCHESTER, JJ., concur.

KAUGER, J. dissents.

---

**3.** The Water District cites this federal statute and two federal cases which have applied it to urge a "bright line" rule which prohibits any competition with a borrowing entity during the term of a loan. *See Glenpool Util. Servs. Auth. v. Creek Co. Rural Water Dist. No. 2,* 861 F.2d 1211 (10th Cir.1988); *City of Madison v. Bear Creek Water Ass'n,* 816 F.2d 1057 (5th Cir.1987). As the trial court noted, however, there was no federal loan involved here. Thus, the federal statute and its application are not relevant to the issue presented.