2010 OK 51

RURAL WATER SEWER AND SOLID WASTE MANAGEMENT, DISTRICT NO. 1, LOGAN COUNTY, OKLAHOMA, an agency and legally constituted authority of the State of Oklahoma, Plaintiff/Counter–Defendant/Appellee,

v.

CITY OF GUTHRIE, an Oklahoma Municipality; the Guthrie Public Works Authority, a public trust, Defendants/Counter–Claimants/Third–Party Plaintiffs/Appellants,

v.

Department of Agriculture, Third–Party Defendant/Appellee,

and

Community Program Loan Trust 1987A, a Massachusetts Business Trust, Third–Party Defendant.

No. 107,468.

Supreme Court of Oklahoma.

June 29, 2010.

Rehearing Denied Jan. 31, 2011.

James C. Milton and Courtney Bru, Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, OK, for Defendants/Appellants City of Guthrie and the Guthrie Public Works Authority.

Michael D. Davis, Steven M. Harris, Doyle Harris Davis & Haughey, Tulsa, OK, for Plaintiff/Appellee Rural Water, Sewer and Solid Waste Management District No. 1.

John C. Richter, United States Attorney, Steven K. Mullins & Kay Sewell, Assistant United States Attorneys, United States At-

torney's Office, Oklahoma City, OK, for Third–Party Defendant/Appellee Department of Agriculture.

COLBERT, J.

¶ 1 The Rural Water, Sewer, and Solid Waste Management District No. 1 (Logan–1), filed an action in the Western District of Oklahoma against the City of Guthrie, an Oklahoma Municipality and the Guthrie Public Works Authority, a public trust (collectively Guthrie), claiming unlawful encroachment on its service area in an alleged violation of a federal law that protects rural water districts from competition while the district remains indebted on loans obtained from the United States Department of Agriculture (USDA). On appeal, the United States Court of Appeals for the Tenth Circuit certified two questions pursuant to the Revised Uniform Certification of Questions of Law Act, Okla. Stat. tit. 20, §§ 1601–1611 (2001):

1. Whether article 5, section 51 of the Oklahoma Constitution precludes Logan–1 from either entering into loan agreements with the USDA that include 7 U.S.C. section 1926(b)'s protection from competition, or enforcing its claimed section 1926(b) protection against other Oklahoma water districts?

2. If either is so, whether there is a "police power" or "public safety" exception to the Oklahoma Constitution's article 5, section 51 prohibition against exclusive rights, privileges, or immunities that would, nevertheless, validate Logan–1's loan agreements with the USDA that include section 1926(b) protection from competition in this case involving provision of a rural public water service?

After careful examination of the Oklahoma Rural Water Districts Act, Okla. Stat. tit. 82, §§ 1324.1 through 1324.35 (2001 & Supp. 2009), under which the District was created, this Court finds no language purporting to grant an exclusive franchise by the Oklahoma Legislature to a district. Following the rea-

soning in *Glenpool Util. Serv's Auth. v. Creek County Rural Water Dist. No. 2,* 861 F.2d 1211 (10th Cir.1988), *cert. den.,* 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989), this Court holds that an indebted rural water district's right to temporarily exclude a competitor's water service within its district is a right bestowed upon the indebted rural water district by Congress pursuant to the terms of the USDA loan agreement; therefore, article 5, section 51 of the Oklahoma Constitution is not implicated. Furthermore, because article 5, section 51 neither precludes nor prohibits enforcement of USDA loan agreements with the accompanying section 1926(b) protection, certified question two is rendered moot.[1]

## FACTS

¶ 2 Pursuant to the Oklahoma Statutes, title 20, section 1604(A)(2), the federal court has submitted "[t]he facts relevant to the question[s], showing fully the nature of the controversy out of which the question[s] arose." Those facts are repeated here, substantially verbatim.

¶ 3 In 1972, the Logan County Board of Commissioners, acting pursuant to state law, created Appellee, Logan–1 as "a non-profit association" that would provide water to rural Logan County, except for the area of the county located within the city limits of Guthrie, Oklahoma, as those limits existed at that time. Appellants, Guthrie, already provided water service to the City itself.

¶ 4 Beginning in 1976, Logan–1 obtained several loans from the USDA. These loans were part of a program established in 1961, when "Congress amended the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1921–2009n, to allow nonprofit water associations to borrow federal funds for 'the conservation, development, use, and control of water ... primarily serving ... rural residents.'" *Moongate Water Co. v. Dona Ana Mut. Domestic Water Consumers Ass'n,* 420 F.3d 1082, 1084 (10th Cir.2005)(quoting 7

---

1. Logan–1's motion requesting this Court to consider the data provided by the USDA Rural Development which is relevant to the second question certified by the Tenth Circuit and Guthrie's response thereto are hereby denied. In addition, all parties', including amici curiae and amicus curiae, requests for oral arguments are hereby denied.

U.S.C. § 1926(a)(1)).[2] Logan–1 obtained a total of five of these loans, two in 1976, and one each in 1978, 1982 and 2003.[3]

¶5 Sometime in 2003, a land developer approached Guthrie seeking water service for his planned development, the Pleasant Hills Apartments. No one disputes that this development is located within the geographic territory that the Logan County Commissioners assigned to Logan–1 in 1972. Nonetheless, it was Guthrie that subsequently extended its water system in order to provide Pleasant Hills with water service.

¶6 As a result, Logan–1 sued Guthrie, in July 2005, claiming that Guthrie had unlawfully encroached on Logan–1's service area, which was protected from competition by section 1926(b) and the terms of its loan agreements which had been authorized by the Oklahoma Legislature pursuant to title 82, section 1324.10(A)(4).[4] Section 1926(b) protects any rural water district that remains indebted on loans obtained from the USDA from competition from other water districts "within the borrowing entity's service area." *Dona Ana Mut. Domestic Water Consumers Ass'n. v. City of Las Cruces*, 516 F.3d 900, 903 (10th Cir.2008) (Doña Ana). Also known as the "Anti–Curtailment" provision, section 1926(b) specifically provides:

> The service provided or made available through any [indebted rural water] association shall not be curtailed or limited by

inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b).

¶7 Section 1926(b)'s protection serves two goals. *See Pittsburg County*, 358 F.3d at 715. First, it provides for:

> greater security for the federal loans made under the program ... By 'protecting the territory served by such an association['s] facility against competitive facilities, which might otherwise be developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system,' § 1926 protects the financial interests of *the United States, which is a secured creditor of the water association,* from reduction of the water association's revenue base.

*Id.* (emphasis added). The second interest served by section 1926(b)'s protection from competition is the "promotion of rural water development 'by expanding the number of

---

**2.** Originally the Farmers Home Administration (FmHA) administered these loans. *See Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 701 (10th Cir.2004). Since 1994, however, the Department of Agriculture has operated this loan program, *see Id.* at 701 n. 1, through its rural utilities service. *See Rural Water Dist. No. 1, Ellsworth County v. City of Wilson*, 243 F.3d 1263, 1269 n. 3 (10th Cir.2001) (citing 7 C.F.R. § 1780.3). For the sake of simplicity, the creditor entity, formerly FmHA, is referred to as the "USDA."

**3.** In 1987, the USDA sold the first four of these loans to Community Program Loan Trust 1987A, a special purpose Massachusetts business trust. That fact, however, does not affect the questions the Tenth Circuit certified to this Court. *See Moongate Water Co. v. Butterfield Park Mut. Domestic Water Ass'n*, 291 F.3d 1262, 1265–67 (10th Cir.2002) (holding transfer of USDA loans to private lenders did not extinguish a rural water district's indebtedness on those loans for

purposes of section 1926(b)); *see also Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1198 (10th Cir.1999).

**4.** Title 82, section 1324.10(A)(4) authorizes a district to:

> [b]orrow money and otherwise contract indebtedness for the purposes set forth in this act, and, without limitation of the generality of the foregoing, to borrow money and accept grants from the United States of America, or from any corporation or agency created or designated by the United States of America, and, in connection with such loan or grant, to enter into such agreements as the United States of America or such corporation or agency may require; and to issue its notes or obligations therefor, and to secure the payment thereof by mortgage, pledge or deed of trust on all or any property, assets, franchises, rights, privileges, licenses, rights-of-way, easements, revenues, or income of the said district ....

potential users of such systems, thereby decreasing the per-user cost.'" *Id.*

¶ 8 "[T]o receive the protection against competition provided by § 1926(b) a water association must (1) have a continuing indebtedness ... [under loans obtained from] the [federal government], and (2) have provided or made available service to the disputed area." *Moongate Water,* 420 F.3d at 1084. Thus, the Tenth Circuit Court has held that a water district's service area protected from competition under section 1926(b) is not necessarily the entire geographic area granted to the district under state law, but is instead the area (1) for which the water district has a right under state law to provide service and (2) has actually done so, or could do so in a reasonable time. *See Sequoyah County,* 191 F.3d at 1201–03.

¶ 9 In addition to these principles defining the protection which section 1926(b) affords rural water districts from competition, state law cannot change the service area to which the protection applies after that federal protection has attached. *See Pittsburg County,* 358 F.3d at 715. For instance, "where the federal § 1926 protections have attached, § 1926 preempts local or 'state law [that] can be used to justify a municipality's encroachment upon [a] disputed area in which an indebted association is legally providing service under state law.'" *Id.* (quoting *Rural Water Sys. No. 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1529 (1997), *cited with approval in Sequoyah,* 191 F.3d at 1202, 1202 n. 8, 1203, & 1204 n. 10).

## SUMMARY OF PARTIES' ARGUMENTS

¶ 10 The main contention by Logan–1 is that pursuant to title 82, section 1324.10(A)(4), of the Oklahoma Statutes, Logan–1 has authority to enter into loan programs with the federal government, including section 1926(b), which limits the ability of a municipality to curtail the water services a district provides. Logan–1 relies on *Glenpool,* 861 F.2d 1211, which held that article 5, section 51 was not violated by the curtailment provision in section 1926(b) because the protective right contained in section 1926(b) came from Congress, not the Oklahoma Legislature and, thus the protection granted to Logan–1 is conditional and temporary, rather than an exclusive franchise. Additionally, Logan–1 argues that even if the loans are contrary to article 5, section 51, Oklahoma recognizes exceptions to the state constitution in situations where the use of the police power is necessary to further a public interest. Specifically, Logan–1 offers case law in support of the proposition that "[w]here a statute touches upon the public health and welfare, the statute cannot be deemed [an] unconstitutional class legislation, even though a specific class of persons or businesses is singled out, where the legislation in its impact is free of caprice and discrimination and is rationally related to the public good." *Kimery v. Pub. Serv. Co. of Okla.,* 1980 OK 187, ¶ 13, 622 P.2d 1066, 1071.

¶ 11 Guthrie concedes that section 1324.10(A)(4) generally allows Logan–1 to obtain federal loans. Guthrie's claim, however, is that as far as section 1926(b) shelters Logan–1 from protection, the provision is contrary to article 5, section 51 of the Oklahoma Constitution, which establishes that the "Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State." Guthrie contends that the Legislature's enactment of section 1324.10 violates the Oklahoma Constitution by eliminating competition with Logan–1. To support its argument, Guthrie points to this Court's decisions in *Comanche County Rural Water Dist. No. 1 v. City of Lawton,* 1972 OK 117, 501 P.2d 490 and *Rural Water & Sewer Dist. No. 4 v. Coppage,* 2002 OK 44, 47 P.3d 872, which allegedly dictate a finding that Logan–1 lacks the authority to enter into the loan agreements with the USDA and that if the Oklahoma Legislature granted a water district exclusive rights, such acts violate article 5, section 51 of the Oklahoma Constitution.

¶ 12 The Oklahoma Municipal League, the City of Elk City, the City of Muskogee, the City of Okmulgee, and the City of Owasso (collectively OML) as *amici curiae:* and the

City of Coweta (Coweta)[5], as *amicus curiae* in support of Guthrie's position, contend that the Oklahoma Constitution prohibits the granting of an exclusive franchise to an Oklahoma utility, absent a vote of the people. The parties are clear to note that neither the Oklahoma Constitution, nor any Oklahoma law, prohibits the creation of water districts and the undertaking of federal loans, including section 1926, to fund those programs. What they urge may not occur, however, is a use of the federal protection to eliminate competition within a district's geographic boundaries. OML and Coweta insist that section 1926(b) was not intended to apply to a district's future water customers and only the actual customers existing at the time of the loan's creation provide the collateral for the federal loan. In addition, OML asserts that section 1926(b) hinders a municipality's capacity to provide sewer services, fire protection, and impairs economic development for the entire State because city services create jobs and raise money for new economic projects. Lastly, the parties jointly contend that no police power or public safety exception exists under current Oklahoma law.

## DISCUSSION

¶ 13 Congress passed the Agricultural Act of 1961. *Le–Ax Water Dist. v. City of Athens*, 346 F.3d 701, 704 (6th Cir.2003). Through Title III of the Act, known as the Consolidated Farm and Rural Development Act, Congress began funding water infrastructure loans to less creditworthy rural areas and small towns to encourage the development, use, and control of water.[6] *See* 7 U.S.C. § 1926(a)(1).

¶ 14 In enacting this provision, "Congress intended § 1926(b) not only to safeguard the viability of rural water associations but also to encourage rural water development by expanding the number of potential users ...." *Rural Water Dist. No. 1, Ellsworth County v. City of Wilson*, 243 F.3d 1263, 1270, (10th Cir.2001)(citing *Scioto County Reg'l Water Dist. No. 1 v. Scioto Water Inc.*, 103 F.3d 38, 40 (6th Cir.1996)). The Act enables a protected association to spread its fixed costs over its customer base and prevent cost from becoming prohibitively expensive. As the Fifth Circuit aptly states, "[t]o allow expanding municipalities to 'skim the cream' by annexing and condemning those parts of a water association with the highest population density (and thus the lowest per-user cost) would undermine Congress's purpose of facilitating inexpensive water supplies for farmers and other rural residents." *City of Madison v. Bear Creek Water Ass'n. Inc.*, 816 F.2d 1057, 1060 (5th Cir.1987). After all, municipalities and other competitors remained free to construct lines and extend water service to these rural areas long before a district's creation but instead, refrained, arguably because those rural areas were not profitable.

¶ 15 This action centers around whether the Oklahoma Legislature, in allowing rural water districts to participate in USDA loan programs that contain an anti-curtailment provision, has granted the rural water district an exclusive right or franchise in contravention of article 5, section 51 of the Oklahoma Constitution. "A legislative act is presumed to be constitutional and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution." *Kimery*, 1980 OK 187, ¶ 6, 622 P.2d at 1069; *see also, Reherman v. Okla. Water Res. Bd.*,

---

**5.** Coweta has voiced its legal opinion because of its participation in the 2002 case of *Coppage*, 2002 OK 44, 47 P.3d 872, a case relied upon here by Guthrie.

**6.** In addition to rural water districts, the USDA loan program assist:
associations, including corporations not operated for profit, Indian tribes on Federal and State reservations and other federally recognized Indian tribes, and public and quasi-public agencies to provide for the application or establishment of soil conservation practices,

shifts in land use, the conservation, development, use, and control of water, and the installation or improvement of drainage or waste disposal facilities, recreational developments, and essential community facilities including necessary related equipment, all primarily serving farmers, ranchers, farm tenants, farm laborers, rural businesses, and other rural residents, and to furnish financial assistance or other aid in planning projects for such purposes.
7 U.S.C. § 1926(a)(1) (2006 & Supp.2009).

1984 OK 12, ¶ 11, 679 P.2d 1296, 1300. Whenever possible, this Court will construe statutes "so as to uphold their constitutionality." *Id.* ¶ 6, 622 P.2d at 1069.

¶ 16 Rural water districts are creatures of statute. *Westville Util. Auth. v. Bennett,* 1995 OK CIV APP 68, ¶ 9, 903 P.2d 880, 883; *see also* Okla. Stat. tit. 82, §§ 1324.1 through 1324.35. They were created by the Oklahoma Legislature in 1963 "for the purpose of developing and providing an adequate rural water supply, gas distribution facilities, sewage disposal facilities and solid waste management system to serve and meet the needs of rural residents within the territory of the district." Okla. Stat. tit. 82, § 1324.3. Upon its creation, a district "shall be a body politic and corporate and an agency and legally constituted authority of the State of Oklahoma for the public purposes" as defined by the Act. Okla. Stat. tit. 82, § 1324.6(6). Section 1324.2(5) defines a "rural resident" as "any natural person, firm, partnership, association, corporation, business trust, federal agency, state agency, state or political subdivision thereof, municipality of ten thousand (10,000) persons or less, or any other legal entity, owning or having an interest in lands within the rural area located within the boundaries of the district." Section 1324.2(6) further defines a "rural area" as an:

> area lying outside the corporate limits of any municipal corporation and includes any areas of open country, unincorporated communities, and, with the consent of the governing body thereof by ordinance duly adopted, may include the area within the corporate limits of any municipality having a population of less than ten thousand (10,000) persons according to the last decennial census, when said municipality is one of the petitioners for creation of a district or for the annexation of additional territory as provided by Section 1324.13
> . . . .

The act further sets forth the procedures for organizing a district and mandates its creation following the proper presentation of a petition to the board of county commissioners. Okla. Stat. tit. 82, §§ 1324.1 through 1324.35.

¶ 17 Creating a district in essence, requires the County Commissioners to draw boundaries by defining the "area which should be included in the district." Okla. Stat. tit. 82, § 1324.6(5) [7] The County Commissioners must "immediately declare the land described in the petition or any part thereof to be incorporated as a district" un-

---

7. Section 1324.6 provides:

> At the time and place set for the hearing and consideration of the petition, it shall be the duty of the board of county commissioners to determine:
> 1. Whether proper notice of the hearing has been given as required by Section 1324.5 of this title;
> 2. Whether the rural residents of the area described in the petition are without an adequate water supply, sewage facilities, gas distribution facilities or solid waste management system to meet their needs;
> 3. Whether the construction, installation, improvement, maintenance and operation of all or a combination of water works, sewage facilities and solid waste management systems are necessary to provide an adequate water supply, sewage facilities, gas distribution facilities or solid waste management system to serve rural residents of the district;
> 4. Whether such improvements or works will be conducive to and will tend to promote the public health, convenience and welfare;
> 5. The area which should be included in the district; and
> 6. Whether there is sufficient water available for purchase or available for appropriation by the Oklahoma Water Resources Board. If, upon such consideration, it shall be found that such petition is in conformity with the requirements of this act, and that such a district should be created the board of county commissioners shall thereupon immediately declare the land described in the petition or any part thereof to be incorporated as a district under the name of "Rural Water and/or Sewer and/or Gas and/or Solid Waste Management District No. _____, _____ County, Oklahoma" (inserting number in order of incorporation and name of county) and thereupon the district shall be a body politic and corporate and an agency and legally constituted authority of the State of Oklahoma for the public purposes set forth in this act. The board of county commissioners shall thereupon enter upon its records full minutes of such hearing, together with its order creating the rural district under said corporate name for the purposes of this act. Such districts shall not be political corporations or subdivisions of the state within the meaning of any constitutional debt limitations, nor shall said districts have any power or authority to levy any taxes whatsoever or make any assessments on property, real or personal.

der the name of the purpose for which it is created. Okla. Stat. tit. 82, § 1324.6(6). The existence of this language implies the Legislature's intent to convey a service area to the district. If not, the act of identifying the district's purpose, area to be served, and recording the legal descriptions with the county clerk and registrar of deeds would be futile. See Okla. Stat. tit. 82, § 1324.4.[8] Thus, the plain language of the Act clearly creates a limited and restricted franchise [9] to serve the defined area. However, such franchise is *not exclusive* [10] of competition within a district's geographical or territorial boundaries, and no legislative intent may be inferred to the contrary. See *Comanche County*, 1972 OK 117, 501 P.2d 490.

■ ¶ 18 As a creature of statute, a district may exercise only the powers and jurisdiction delegated to it by the Legislature. Each district must operate as a nonprofit entity, charging only rates and fees necessary for the operation and maintenance of the water supply system. See Okla. Stat. tit. 82, § 1324.11. Although exempted from taxes of any nature, a district has no power to levy taxes. Okla. Stat. tit. 82, §§ 1324.6(6), 1324.22. In addition, districts are granted certain powers necessary to adequately perform the duties of a rural water district. See

Okla. Stat. tit. 82, § 1324.10. Included is the ability to borrow money or effectuate a contract in order to carry out the purpose of the district. Okla. Stat. tit. 82, § 1324.10(A)(4). The statutory vehicle enabling rural water districts to enter into loan agreements with the USDA is title 82 section 1324.10. That section provides in part:

A. Every district incorporated hereunder shall have perpetual existence, subject to dissolution as provided by the Rural Water, Sewer, Gas and Solid Waste Management Districts Act, and shall have power to:

. . . .

4. Borrow money and otherwise contract indebtedness for the purposes set forth in this act, and, without limitation of the generality of the foregoing, to borrow money and accept grants from the United States of America, or from any corporation or agency created or designated by the United States of America, and, in connection with such loan or grant, to enter into such agreements as the United States of America or such corporation or agency may require; and to issue its notes or obligations therefor, and to secure the payment thereof by mortgage, pledge or deed of trust on all or any property, assets,

8. Section 1324.4 states:

Any two or more owners of lands may file with the county clerk a petition addressed to the board of county commissioners praying for the incorporation of a district under the provisions of this act. The petition shall give a legal description of the lands owned by the petitioners and other lands which the petitioners propose to be incorporated into the proposed district and shall state:

. . . .

4. That there is sufficient water available for purchase or available for appropriation by the Oklahoma Water Resources Board to serve the needs of the district. Attached to said petition shall be an accurate map or plat of the proposed territory to be embraced within the district showing the location of said territory by reference to sections or portions thereof and the township and range wherein the same are located.

9. "The word 'franchise' is generally used to designate a right or privilege conferred by law. To be a 'franchise' the right possessed must be such as cannot be exercised without the express permission of the sovereign power. It is the privi-

lege of doing that which does not belong to the citizens of the country generally by common right." *Okla. Elec. Coop., Inc. v. Okla. Gas & Elec. Co.*, 1999 OK 35, ¶ 10, 982 P.2d 512, 515 (citing *Okla. Gas & Elec. Co. v. Total Energy*, 1972 OK 108, ¶ 24, 499 P.2d 917, 921).

10. An "exclusive franchise" is a contractual promise by the granting authority not to grant any similar franchises to anyone else. See *generally* 36 Am. Jur. 2d, § 32. "[I]f the term "exclusive" is not used, nothing short of an express provision will make the franchise exclusive . . . ." *Id.* § 34. In the context of this case, had the Oklahoma Legislature granted an "exclusive franchise," not only would it violate article 5, section 51, it would be prohibited from granting a competing franchise to another water entity without compensating the owners of the first franchise because the grant of an exclusive franchise removes from the grantor the "power and authority to grant similar rights to others or to permit others to engage in the same activity for which the exclusive franchise was awarded." *Gordon's Const. & Landfill, Inc. v. Iberia Parish Gov't*, 815 So.2d 991, 996 (La.App.3d Cir.2002)(citing 36 Am. Jur. 2d, § 33).

franchises, rights, privileges, licenses, rights-of-way, easements, revenues, or income of the said district;

. . . .

9. Make any and all contracts necessary or convenient for the exercise of the powers of the district;

. . . .

Thus, the Act empowers rural water districts to enter into agreements/contracts and to "secure the payment thereof" that are "necessary or convenient" in furthering the district's purpose. *Id.* In furthering a district's purpose, the Legislature's grant of authority includes authorization to accept conditions that accompany permissible loan and grant programs. *See Glenpool,* 861 F.2d at 1216. Relying upon this language, Logan–1, like many rural water districts, entered into loan agreements with the USDA to receive funding for its water system.

¶ 19 As previously stated, the general structure of the USDA loans are described as a federal-state finance program in which the federal government provides assistance to participating states to aid the development of, among other things, water service and management facilities to rural areas. These loans are secured by the borrowing district's assets as a condition of the loan. *See* 7 U.S.C. § 1926(a). Subsection (b) limits competition and restricts a customer's choice of service to the indebted association during the life of the loan. *Id.* at § 1926(b). Like other federal-state cooperative programs, participation in the USDA program is voluntary and the States are given the choice of complying with the conditions set forth in the Act or forgoing the benefits of federal funding.[11] In so borrowing, "Oklahoma—through its authorized ... [districts]—bound itself and all of its subdivisions ... to the [terms and] conditions ..." of the federally funded program. *Glenpool,* 861 F.2d at 1216.

■ ¶ 20 Guthrie does not appear to dispute Logan–1's authority to obtain federal loans. Rather, Guthrie advances the premise that section 1324.10 is unconstitutional to the extent that it authorizes a district to bind the State of Oklahoma to section 1926(b) protection. More specifically, it is alleged that a district's section 1926(b) right to exclude a competitor's water service runs afoul of article 5, section 51 of the Oklahoma Constitution. Guthrie pointedly notes that "where article 5, section 51 controls, this Court has refused to permit the Legislature to 'sanitize' a constitutional violation by contracting with the federal government." Logan–1 however, does not contend that it has an exclusive right to its service area in the sense that no other entity may ever overlap or acquire Logan–1's geographical territory.

■ ¶ 21 "The Constitution [is] the bulwark to which all statutes must yield...." *Draper v. State,* 1980 OK 117, ¶ 8, 621 P.2d 1142, 1145. The framers' intent and the citizens of Oklahoma must be considered in construing constitutional provisions. *Okla. Elec. Coop., Inc. v. Okla. Gas & Elec. Co.,* 1999 OK 35, ¶ 7, 982 P.2d 512, 514. The provision's language controls unless such language is ambiguous. *Id.*

■ ¶ 22 Article 5, section 51 of the Oklahoma Constitution states: "The *Legislature* shall pass no law granting to any association, corporation, or individual any *exclusive* rights, privileges, or immunities within this State." (emphasis added). The constitutional provision prevents the Oklahoma Legislature from granting an exclusive franchise. The prohibition applies only to the actions of the Oklahoma Legislature, and is triggered only when the Legislature's actions are tantamount to granting "rights, privileges, or immunities" *exclusive* of all others. *See Kimery,* 1980 OK 187, ¶ 13, 622 P.2d at 1071 (noting "[t]he inhibition against special privileges and immunities contained in Art. V, § 51, was intended to preserve equality between citizens, *State v. Fletcher,* 168 Okl. 538, 34 P.2d 595, 597 (1934), who are similarly situated, *Noble State Bank v. Haskell,* 22 Okl. 48, 97 P. 590 (1908)"). Thus, the consti-

---

11. *See generally Glenpool,* 861 F.2d 1211. The Tenth Circuit has held that section 1926 sets forth both the mechanism for making the loans and the accompanying conditions. "The conditions of section 1926(b), moreover, serve as protection of federal funds advanced under the congressional spending power and pursuant to a national policy concerned with water management and rural populations. Congress clearly acted within its powers." *Id.* at 1215.

tutional prohibition is directed at the "exclusiveness", not at the granting of a franchise generally. The Oklahoma Legislature empowered water districts to accept a condition (not an exclusive right to serve) to further the district's purpose. The ability to curtail a competitor's water service for a limited time is derived solely from the federal legislature through section 1926(b), not the Oklahoma Legislature. *Glenpool*, 861 F.2d at 1216. In *Glenpool*, a federally indebted rural water district sought declaratory and injunctive relief against a municipality claiming the district had an exclusive right to furnish water service to a new development located within the district's geographic territory as originally assigned by the Board of County Commissioners of Creek County in 1964. Like the defendants here, the municipality argued that the Oklahoma statute authorizing the water district to borrow from the federal government, coupled with section 1926(b) protection amounts to the granting of an exclusive franchise by the Oklahoma Legislature in contravention of the Oklahoma Constitution. Finding that there was no state legislative grant of an exclusive right to provide service, the Tenth Circuit held that the Oklahoma Legislature "authorized the acceptance of a condition" and that the district's right to exclude the municipalities water service was granted by the federal legislature through section 1926(b). *See Glenpool*, 861 F.2d 1211. Therefore, an indebted district's right to be free from a competitor's unqualified intrusion into its service area is a right granted by Congress, and only "Congress can terminate that right." *Id.* at 1216. Further, Oklahoma's constitutional ban on the Oklahoma Legislature's grant of an exclusive franchise does not apply to indirect, remote, or incidental benefits provided by Congress pursuant to the terms of a federally funded loan program. We agree with the Tenth Circuit's conclusion that article 5, section 51 is neither implicated nor violated as no action by the Oklahoma Legislature has been taken that grants an exclusive right to a water district.

¶ 23 In addition, where federal section 1926(b) protections have attached, section 1926(b) preempts local or state law that can be used to justify a municipality's

(or any competitor's) encroachment upon a disputed area in which the indebted association is legally providing service under state law. *Pittsburg County*, 358 F.3d at 715. Therefore, even assuming if section 1926(b) could be construed as violating the Oklahoma Constitution, the United States Supreme Court has long recognized that where a state law or constitution stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress under the Supremacy Clause, those laws are preempted and "judges of every state are bound thereby." *Robertson Properties, Inc. v. In re Detachment of Territory from Pub. Water Supply Dist. No. 8*, 153 S.W.3d 320, 326 (Mo.Co.App.2005); *see Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *see also* U.S. Const. Art. VI, Cl. 2. As such, a state court's decision on the effect of a federal statute is not binding on the federal courts. *Rural Water Dist. No. 3 v. Owasso Util's Auth.*, 530 F.Supp. 818, 823 (1979). In furthering the full purpose and objectives of Congress, federal courts have deemed a federally indebted rural water district's service area as "sacrosanct." *See North Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 915 (5th Cir.1996) (per curiam) (quoting *Bear Creek Water Ass'n Inc.*, 816 F.2d at 1060–61). Therefore, section 1926 shall be liberally constructed to protect the indebted district from an unqualified intrusion. *Glenpool*, 861 F.2d at 1214.

¶ 24 Guthrie and OML as *amici curiae*, jointly interpret section 1926(b) as a complete infringement of a municipality's sovereignty. They advance the position that section 1926(b) "cripples" "both the State and an affected municipality [rendering them]... powerless to protect their citizens' needs for adequate public safety, access to essential services, promotion of economic development and other benefits of government." *Amici curiae* contend further that 1926(b) prohibits municipalities from providing water, often at rates lower than a district, to its own taxpayers and leaves taxpayers without fire protection because the volume of water required for fire fighting is made available only so long as it is paid for through water rates. They add "it is not fiscally feasible to extend

water lines solely for fire purpose." We are not persuaded.

¶ 25 The overarching theme of section 1926(b) seeks to limit the actions of a municipality when those actions would lead to direct competition with the district's customers while the district remains indebted to the federal government. *Owasso*, 530 F.Supp. at 824. The Act's purpose is twofold: provide fresh and clean water to rural households, and protect the federal government as insurer of the loans. *Le–Ax*, 346 F.3d at 705. The court in *Owasso* held that section 1926(b) does not preclude municipalities from providing water outside of their city limits and within the geographic boundaries of a water district. Rather, section 1926(b) protection only becomes an issue when a municipality provides water in a manner that affects the water district's ability to repay its federal loans. 530 F.Supp. at 824 (noting that there is "no conflict between the Oklahoma Statutes empowering municipalities to furnish water outside of their city limits and the Federal Act").

¶ 26 The congressional enactment, however, does not preclude a municipality from exercising all municipal acts within the district. Despite the anti-curtailment provision, jurisdictions that have addressed the issue have not read such language to prohibit a municipality from erecting and maintaining water lines within the district for fire protection purposes. *See Id.*, 530 F.Supp. at 823 (holding that section 1926(b)'s scope is limited to curtailment of competition with potential customers, not fire services); *Sequoyah County*, 191 F.3d at 1204 n. 10; *Rural Water System # 1 v. City of Sioux Ctr.*, 29 F.Supp.2d 975, 993 (1998); *see also Glenpool*, 861 F.2d at 1216 (finding that a municipality may regulate water lines for fire hydrants within the boundaries of a rural water district). In fact, the right of an indebted association to supply water service within its service area under section 1926(b), coexists with a municipality's right to provide fire protection. A district's capacity to provide fire protection therefore, is not a consideration to invoke section 1926(b) protection. *North Shelby Water Co. v. Shelbyville Mun.*

*Water & Sewer Comm'n*, 803 F.Supp. 15, 23 (E.D.Ky.1992).

¶ 27 Likewise, a municipality's sovereign right is not affected by the anti-curtailment provision. While a municipality cannot seek to engage in direct competition with an indebted water district during the life of the loan, nothing in the Act prevents a municipality from exercising its governmental functions to regulate water services to an overlapping service area within that district. For instance, Guthrie asserts that the anti-curtailment provision unconditionally prohibits a municipality from extending water service. This contention is incorrect.

¶ 28 A district's right to exclude a competitor's water service is a qualified not an exclusive right, limited in time and in scope so as not to severely impair a municipality from performing its governmental functions. The provision precludes competitive water services only while a district remains indebted to the USDA to the extent that a competitor's services would curtail or limit the indebted district's ability to provide water services and repay its loans. Accordingly, section 1926(b) is a district's "shield" from a competitor's unqualified intrusion. However, an indebted association cannot use such protection to categorically prevent a competitor from ever servicing the district's area. For instance, a district loses its anti-curtailment protection when a district refuses to extend water service to a customer within its service area. In *Sequoyah County*, the court, interpreting title 82, section 1324.2(7), of the Oklahoma Rural Water and Sewer Act, determined that a water district is not required to provide services to every customer within its district. 191 F.3d at 1202 (noting that landowners subscribe to "benefit units" within the district but the district maintains discretion over the existence and cost of such units). In such a case, nothing prevents a municipality from extending water service within that district if the district has made no attempt to provide water to its customer after a request for service is made. *Moongate Water Co., Inc. v. Butterfield Park Mut. Domestic Water Ass'n*, 291 F.3d 1262, 1267–68 (10th Cir.2002).

¶ 29 Similarly, the Tenth Circuit has held that charging unreasonable, excessive, and confiscatory fees to customers is the equivalent of not providing service under the Act even where a district has adequate facilities. *See Pittsburg County,* 358 F.3d at 719 (reasoning that the anti-curtailment provision is aimed at prohibiting "excessively high monopolistic pricing without [providing] legal recourse for consumers and with no additional market entry by a supplier"); *see also Moongate,* 291 F.3d at 1268 (citing *City of Wilson,* 243 F.3d at 1271). At most, section 1926(b) ordains a dual water authority function within a municipal area for a period of time.

¶ 30 Further, other mechanisms exist for removing a district's protection. For example, the Act does not prevent a municipality from purchasing a district's water facilities, if done pursuant to USDA regulations. *See Bear Creek Water Ass'n Inc.,* 816 F.2d at 1061. Moreover, at anytime the Oklahoma Legislature may amend the Oklahoma Statutes to further limit the rights and duties of rural water districts concerning future indebtedness pursuant to title 82, sections 1324.10, 1324.19, and 1324.33 of the Oklahoma Statutes or altogether dissolve the districts if "in [the Legislature's] opinion [rural water districts or such contracting] may be injurious to the citizens of this state." Okla. Const. art. 9, § 47[12]; *see also Pub. Serv. Co. v. Caddo Elec. Co-op.,* 1970 OK 219, ¶ 13, 479 P.2d 572, 576.

 ¶ 31 The mere fact that a federally guaranteed loan contains an anti-curtailment provision does not render the loan agreement between a rural water district and the federal government unconstitutional. Additionally, the mere fact that other less restrictive loan programs are available to a rural district does not diminish a rural water district's ability to contract with a statutorily prescribed entity to further the district's purpose. *See generally* Okla. Stat. tit. 82 §§ 1324.1 through 1324.35. A rural water district has unbridled discretion to obtain a loan that provides the greatest benefit to its mission and purpose; and the Oklahoma Legislature has not limited the district's discretion.

¶ 32 The parties correctly note that this Court previously rejected a ritualistic or bright line approach in determining a district's exclusive right to serve customers within its geographical boundaries. Guthrie, Coweta, and OML direct this Court's attention to *Comanche County* and its progeny in concluding that the Tenth Circuit's holding in *Glenpool,* allegedly contradicts this Court's prior rulings on issues of controlling Oklahoma law regarding the types of contracts that are prohibited under article 5, section 51 of the Oklahoma Constitution. However, neither *Comanche County* nor *Coppage* addressed collateral protection in terms of municipal encroachment and a district's services to current and potential future customers under the protections afforded by Congress pursuant to section 1926(b). Therefore, Guthrie and the supporting *amicus curiae's* reliance on *Comanche County* and *Coppage* are misplaced.

¶ 33 In *Comanche County,* a city was selling water to a private water distributor located beyond city limits but within a rural district both before and after the district's creation. 1972 OK 117, 501 P.2d 490. This Court was asked to determine whether a city which sold water to a private water distributor was operating in a governmental or proprietary function. The district was a non-profit rural water district organized in 1965 under title 82 and derived a substantial portion of its funding from the FmHA (now USDA) pursuant to section 1926. The private distributor operated a small water distribution system within the district's territory *both before and after* the district's formation. Pursuant to title 11, sections 37–119, 37–120 and 37–123, of the Oklahoma Statutes, the private distributor contracted

---

12. Article 9 section 47 of the Oklahoma Constitution provides:

The Legislature shall have power to alter, amend, annul, revoke, or repeal any charter of incorporation or franchise now existing and subject to be altered, amended, annulled, revoked, or repealed at the time of the adoption of this Constitution, or any that may be hereafter created, whenever in its opinion it may be injurious to the citizens of this State, in such manner, however, that no injustice shall be done to the incorporators.

with the city to purchase water from the city's nearby facilities. Likewise, the district purchased water from the city's nearby facilities as authorized by title 11, section 37–121, of the Oklahoma Statutes.

¶ 34 The rural water district sought a writ of mandamus against the city, alleging that the city's water sales to the private distributor violated the district's loan agreement with the USDA and that the contract between the city and the private distributor amounted to a "private franchise." The district's argument was based on section 1926(b)'s language providing that services "shall not be curtailed or limited ... by the granting of any private franchise for similar services within such area during the term of such loan...." The district asserted that the city's water sales in essence, created a "private franchise" in the private distributor. There was however, no direct assertion that the district had an exclusive franchise for the sale and distribution of water within its geographical boundaries.

¶ 35 This Court determined that the controlling provision was article 18, section 5 of the Oklahoma Constitution and held that a municipality is permitted to grant a franchise *inside* its corporate boundaries as part of its governmental function. *Id.* ¶ 16, 501 P.2d at 492. The Court noted that there is no statutory authorization permitting a municipality to grant a franchise of any kind beyond its corporate bounds. Therefore, the city was acting in its proprietary capacity in its dealings with the private distributor and the parties' relationship was "purely contractual, consisting basically of agreements for the sale of water from the City to [the private distributor]." *Id.* ¶ 17, 501 P.2d at 492. Unlike the instant case, *Comanche County* did not involve a municipality's encroachment into a federally protected territory *after* the district's organization and participation in the USDA program. Rather, the contractual relationship between the city and the private distributor predated the district's existence. At no time was the private distributor a customer or potential customer of the district.

¶ 36 In addition, this Court touched upon the constitutionality of a district's power to

contract with section 1926(b) protection in response to the assertion that the Oklahoma Legislature intended to grant a rural water district an exclusive franchise when the Legislature empowered rural water districts to contract with the USDA under title 82, section 1324.10(A)(4). In *Comanche County,* this Court rejected the trial court's reasoning that the Oklahoma Legislature intended to evade the constitutional prohibition by empowering a district to contract with the USDA. "Under ... [the trial court's reasoning], the contracting power of the District, authorized by the Legislature, becomes a sort of 'intermediate link' between the power of the Legislature and the creation of an exclusive franchise." *Id.* ¶ 20, 501 P.2d at 493. However, this line of reasoning has previously been rejected as the Legislature is without the power to grant an exclusive franchise under article 5, section 51, of the Oklahoma Constitution. *Id.* (citing *State ex rel. Settles v. Bd. of Edu.,* 1964 OK 12, ¶ 16, 389 P.2d 356, 360). It was that line of reasoning this Court rejected in *Comanche County.* No analysis was given as to which entity, be it the Oklahoma Legislature or Congress, authorized the qualified right. That right, "is not permanent, but contingent upon the district's outstanding federal debt; it does not prevent the municipality from regulating such aspects as water lines for fire hydrants; and it does not prevent the municipality from purchasing facilities from the district, if done pursuant to FmHA regulations." *Glenpool,* 861 F.2d at 1216 (citing *Bear Creek Water Ass'n, Inc.,* 816 F.2d at 1061). Consequently, *Comanche County* is not controlling.

¶ 37 Contrast *Comanche County* with this Court's ruling in *Coppage,* 2002 OK 44, 47 P.3d 872. In *Coppage,* this Court was asked to determine whether a state loan program enacted under title 82, section 1085.36, of the Oklahoma Statutes limited the county commissioner's authority to separate a tract of land from a rural water district and prohibit a city from providing water within the district's territory to a future customer.

¶ 38 In construing section 1085.36, this Court determined that the state loan program's scope of collateral protection extended to current " 'customers' of the portion of

**52**

the system being financed." *Id.* ¶ 12, 47 P.3d at 875. At the time the disputed area was released and separated, no customers existed nor had the district provided services since 1988. The purpose of the state loan program's collateral protection was to "prevent a raid on established customers of the borrowing entity who are served by the financed portion of the system." *Id.* A district may not assert collateral protection based upon its geographical boundaries as such territorial approach under section 1085.36 would be in contravention of article 5, section 51 of the Oklahoma Constitution. *Id.* ¶ 13, 47 P.3d at 876. It was a state loan program, created by the Oklahoma Legislature, which provided the funding and collateral protection to the borrowing district. That program was enacted and interpreted subject to the constitutional restraints on the Oklahoma Legislature.

¶ 39 In the instant case, this Court is presented with a federally funded loan program and its accompanying anti-curtailment provision as a condition for funding the development and maintenance of a rural water district pursuant to section 1926. The protection at issue is afforded by Congress pursuant to its spending powers. Article 5, section 51, of the Oklahoma Constitution is a limitation on the Oklahoma Legislature. The constitutional provision, however, expresses no limitation upon the authority of Congress to prohibit those "things which it views as detrimental to the accomplishment of its lawful objectives." *Owasso,* 530 F.Supp. at 825.

### CONCLUSION

¶ 40 Today's pronouncement expresses no opinion as to which entity has the right to provide service to the Pleasant Hills development. This opinion is limited to a holding that the Oklahoma Legislature did not grant an exclusive right or franchise under title 82, sections 1324.1 through 1324.35, of the Oklahoma Rural Water Districts Act. Article 5, section 51 of the Oklahoma Constitution is neither implicated, nor violated when a district participates in the above USDA program that includes section 1926(b) protection

as a condition of the federally funded program.

CERTIFIED QUESTIONS ANSWERED.

CONCUR: EDMONDSON, C.J.; TAYLOR, V.C.J.; HARGRAVE, WATT, WINCHESTER, COLBERT, REIF, JJ.

CONCUR IN RESULT: OPALA, KAUGER, JJ.