2011 OK 53

Michael C. THOMAS, Appellant/Counter–Appellee,

v.

Brad HENRY, Governor, State of Oklahoma, and Board of County Commissioners of Tulsa County, Appellee/Counter–Appellant.

No. 107,201.

Supreme Court of Oklahoma.

June 14, 2011.

Steven R. Hickman, James C. Thomas, Thomas Law Firm PLLC, Tulsa, Oklahoma, for Appellant/Counter–Appellee.

M. Daniel Weitman, Sandra D. Rineheart, Office of the Attorney General of the State of Oklahoma, Oklahoma City, Oklahoma, for Appellee/Counter–Appellant.

PER CURIAM.

¶ 1 Plaintiff/Appellant Michael C. Thomas filed suit in district court seeking a declaratory judgment that H.B.1804, the Oklahoma Taxpayer and Citizens Protection Act of 2007, 51st Leg., 1st Sess. (Okla.2007), is unconstitutional. The plaintiff sued Brad Henry, Governor of the State of Oklahoma, and the Board of County Commissioners of Tulsa County.[1] The Board of County Commissioners of Tulsa County was dismissed as a defendant upon stipulation of the parties and is not a party to the appeal. The Governor did not object to being named a defendant.

¶ 2 The defendants filed a motion to dismiss, claiming that the plaintiff lacked standing to sue. The trial judge denied the defendants' motion to dismiss. Plaintiff filed a motion for summary judgment. The trial judge partially granted the motion for summary judgment, finding that Section 13(A)(1) and (2) violated the single-subject rule. The trial judge severed that portion from the remainder of H.B.1804 and held that the remainder of H.B.1804 did not violate the Oklahoma constitutional provisions urged by the plaintiff. The plaintiff appealed and the defendant filed a counter-appeal, arguing that the trial court lacked jurisdiction because the plaintiff lacked taxpayer standing to challenge H.B.1804 and that the trial court erred in determining that a portion of Section 13 of the Act violated the single-subject rule and was severable. The plaintiff's motion to retain the appeal in the Supreme Court was granted. The plaintiff filed a motion for oral argument to which the defendant objected. The motion for oral argument is denied.

## STANDING

¶ 3 Plaintiff's standing to sue in this case is based on his status as a resident taxpayer challenging the wrongful expenditure of public funds.[2] The plaintiff argues that implementing and enforcing an unconstitutional statute will result in the illegal expenditure of public funds. The Attorney General, representing Governor Henry, argues that more than "implementing" an unconstitutional statute must be involved: the statute itself must be for the purpose of appropriating public funds or spending public funds illegally.

¶ 4 The Attorney General argues that H.B. 1804 is a non-fiscal, non-appropriation bill

---

1. The plaintiff's authority for naming the Governor as defendant is Okla. Const. Art. 6, § 8:

    "The Governor shall cause the laws of the State to be faithfully executed, and shall conduct in person or in such manner as may be prescribed by law, all intercourse and business of the State with other states and with the United States, and he shall be a conservator of the peace throughout the State."

    See *Local 514 Transport Workers Union of America v. Keating*, 2003 OK 110, 83 P.3d 835 (governor named as defendant in constitutional challenge to Oklahoma's right-to-work law).

2. The plaintiff did not claim to be personally injured by the Act. In a later trial court brief, the plaintiff argued that he has standing as an injured party because he is a landlord who owns and rents property to tenants who may be of Hispanic origin and that H.B.1804 "creates great uncertainty" as to his legal obligation to report illegal immigrants.

that neither appropriates public funds nor expends public funds. The Attorney General argues that taxpayer standing has never been based on the incidental costs of enforcing a statute that is a non-fiscal/non-appropriation statute.

¶ 5 The plaintiff argues that it is a legal wrong for the state to spend public money to enforce a statute that is unconstitutional. Plaintiff gives as example Section 12 of the Act that requires the Department of Public Safety (DPS) to establish a fraudulent documents identification unit subject to availability of funding and requires the DPS to "employ sufficient employees to investigate and implement such a unit." Plaintiff further argues that enforcement of the requirements of the Act will put fiscal strain on the budgets of the state, counties, schools and universities to comply.

¶ 6 We held in *Oklahoma Public Employees Association v. Oklahoma Department of Central Services*, 2002 OK 71, 55 P.3d 1072, that a taxpayer possesses standing to seek equitable relief when alleging that violation of a statute will result in illegal expenditure of public funds. That case involved a contract entered into by DHS to outsource the management of a mental health facility in Enid, as well as a contract to furnish the private company with food, pharmaceuticals and medical supplies using state contracts. Oklahoma Public Employees Association (OPEA) sought a permanent injunction/declaratory judgment against implementation of the contracts and argued that it had standing to sue because DHS violated state statutes or public agency rules that would result in the illegal expenditure of public funds. This Court affirmed the trial court and held that the members of OPEA, as taxpayers, possessed standing to challenge an alleged wrongful expenditure of public funds.

¶ 7 The trial judge in this case overruled the Governor's motion to dismiss based on the taxpayer's lack of standing. We agree with the trial judge that there is a sufficient involvement of public funds at issue to warrant taxpayer standing to challenge the Act. The Attorney General's interpretation that taxpayer standing can arise only when dealing with appropriated funds is too restrictive.

## CONSTITUTIONAL CHALLENGES

¶ 8 In considering a statute's constitutionality, courts are guided by well-established principles and a heavy burden is cast on those challenging a legislative enactment to show its unconstitutionality. *Fent v. Okla. Capitol Improvement Authority*, 1999 OK 64, ¶ 3, 984 P.2d 200, 204. Every presumption is to be indulged in favor of the constitutionality of a statute. *Id.* We turn now to the plaintiff's challenges based on alleged violations of Oklahoma's Constitution. Plaintiff challenges H.B.1804 as violating Article 5 § 57, Article 5 §§ 46, 59, Article 4 § 1, and Article 5 § 48 of Oklahoma's Constitution. Plaintiff challenges H.B.1804 only on the specific alleged violations of Oklahoma's Constitution. No separate questions of federal law are presented. In a federal court challenge to Sections 7 and 9 of H.B.1804, the Tenth Circuit Court of Appeals recently affirmed the granting of a preliminary injunction prohibiting the enforcement of Section 7(C) and Section 9 of H.B.1804 on the grounds of irreparable harm and the likelihood that the plaintiffs will prevail on their challenge to those sections as preempted by federal immigration law and, hence, unconstitutional as a violation of the Supremacy Clause of the United States Constitution.[3] *Chamber of Commerce of the United States of America v. Edmondson*, 594 F.3d 742 (10th Cir.2010).

### I.

### SPECIAL LAW

¶ 9 Plaintiff asserts that H.B.1804 is unconstitutional on its face because it con-

---

3. The challenge to Sections 7 and 9 of H.B.1804 was filed in the federal court for the Western district of Oklahoma, alleging that the provisions were preempted by federal law, and a motion for preliminary injunction was filed seeking to preclude those portions of the Act from becoming enforceable as scheduled. *Chamber of Commerce of the United States of America v. Henry*, 2008 WL 2329164 (W.D.Okla.2008) (not reported in F.Supp.2d).

tains one or more special laws in direct violation of Okla. Const., Art. 5, §§ 46, 59. Art. 5, § 46 provides that the legislature shall not, except as otherwise provided in the Constitution, pass any local or special law authorizing certain specified acts.[4] Article 5, § 59 provides that laws of a general nature shall have a uniform operation throughout the state and where a general law can be made applicable, no special law shall be enacted. The trial judge found that the provisions of H.B.1804 do not violate the Constitutional provisions against the passage of local or special laws.

¶ 10 The plaintiff objects specifically to Section 5(C) of H.B.1804 (codified at 22 O.S. § 171.2(C)) which provides: "For the purpose of determining the grant or issuance of bond, it shall be a rebuttable presumption that a person whose citizenship status has been verified pursuant to subsection (B) of this section to be a foreign national who has not been lawfully admitted to the United States is at risk of flight." The plaintiff alleges that Section 5(C) of H.B.1804 (codified at 22 O.S. § 171.2(C)) falls into the § 46 prohibition because it facially conflicts with the prohibition against special laws that change the rules of evidence in judicial proceedings, as well as special laws authorizing limitation of civil or criminal actions. Plaintiff says that this changes the rules of evidence in judicial proceedings when such proceedings deal with the release of a prisoner on bail, and that limitation on the issuance of bail also conflicts with the prohibition on limitation of civil or criminal actions.

¶ 11 The Attorney General asserts that subsection C must be read with the rest of the section. Title 22 O.S. § 171.2(A) states when a person charged with a felony or driving under the influence is confined for any period in jail, a reasonable effort shall be made to determine the citizenship status of the confined person. Subsection B provides that if the prisoner is a foreign national, the jail keeper or other officer shall make a reasonable effort to verify that the prisoner has been lawfully admitted to the United States and, if so, that such lawful status has not expired. The Attorney General argues that the constitutional prohibition in § 46 does not mean that the legislature cannot pass *any* laws on the twenty-eight subjects listed in § 46, but only that it cannot pass *special* laws on those subjects.

■ ¶ 12 A general statute is one that uniformly regulates or involves all persons or things in a given class and is general in its application and embrace to all of a given class, as opposed to applying to less than an entire class of similarly-situated persons. *Macy v. Board of County Commissioners,* 1999 OK 53, ¶ 14, 986 P.2d 1130, 1138–1139. In *Grimes v. Oklahoma City,* 2002 OK 47, ¶ 10, 49 P.3d 719, 723, we said:

> "We held in *Anderson v. Walker,* 1958 OK 297 ¶ 16, 333 P.2d [570] 579, 574 that a law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted ... It is a general law because no part of the class of municipalities is separated for different treatment, and it relates to all municipalities in the state. Since we determine that § 22–159 is a general law, we need not analyze the statute in the context of Okla. Const. Art. 5, § 59 because this provision pertains to special laws. *Reynolds v. Porter,* 1988 OK 88 ¶ 14, 760 P.2d 816, 822–823."

■ ¶ 13 The issue to be resolved in an Art. 5, § 46 attack is whether a statute upon

---

4. Okla. Const. Art. 5, § 46 provides:

   The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

   \* \* \*

   *Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or oth-* *er tribunals,* or providing or changing the methods for the collection of debts or the enforcement of judgments or prescribing the effect of judicial sales of real estate;

   \* \* \*

   *For limitation of civil or criminal actions;* (emphasis added).

   \* \* \*

a subject enumerated in that section targets for different treatment less than an entire class of similarly situated persons or things. *Zeier v. Zimmer*, 2006 OK 98, 152 P.3d 861. We look to see whether part of an entire class of similarly-affected persons is separated for different treatment; in that case, medical malpractice tort victims were singled out for different treatment from the requirements to sue tortfeasors faced by other tort victims. *Id.*

¶ 14 The class in Section 5(C) of H.B.1804 (codified at 22 O.S. § 171.2(C)) is foreign nationals not lawfully admitted to the United States who are charged with felonies or DUIs. Title 22 O.S. § 171.2(C), H.B.1804 Section 5(C), creates a rebuttable presumption that these persons are flight risks. The Oklahoma Constitution's Bill of Rights, Art. 2, § 8, provides that all persons shall be bailable by sufficient sureties except that bail may be denied for the five reasons set out therein.[5] Section 8 further requires that for the offenses specified in paragraphs 2 through 5 the proof of guilt must be evident, or the presumption must be great, and it must be on the grounds that no condition of release would assure the safety of the community or any person. See *Brill v. Gurich*, 1998 OK CR 49, 965 P.2d 404. We find that Section 5(C) of H.B.1804 (codified at 22 O.S. § 171.2(C)) is a special law prohibited by the Art. 5, § 46 proscription on the legislature's passing special laws "regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals ..." Whether a particular defendant is a flight risk is a determination to be made by the trial judge in that case. We therefore reverse the trial court's ruling insofar as it holds Section 5(C) (codified at 22 O.S. § 171.2(C)) constitutional. Otherwise we do not find that the Act is in violation of Art. 5, §§ 46, 59.

## II.

### NON–DELEGATION DOCTRINE

■ ¶ 15 The plaintiff contends that H.B. 1804 unlawfully delegates Oklahoma's legislative authority to the federal government, without providing any standards therefor, in violation of Article 4 § 1, Oklahoma Constitution which provides:

"The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive and Judicial; and, except as provided in this Constitution, the Legislative, Executive and Judicial departments of government shall be separate and distinct and neither shall exercise the powers properly belonging to either of the others."

The plaintiff says that the Act unlawfully delegates power to the federal government, such as the Department of Homeland Security. The Attorney General argues that the Act simply acknowledges federal supremacy in the area of immigration regulation; thus, the legislature is deferring to existing or potential federal systems for verifying the citizenship status of individuals. The trial judge did not make a ruling on the non-delegation argument.

¶ 16 The Attorney General states that Section 6 of H.B.1804 (codified at 25 O.S. §§ 1312 and 1313)does not delegate the authority to the federal government to establish a Status Verification System but rather it refers to an electronic system *already being operated* by the federal government. Thus, the Attorney General argues, no state

---

5. **Art. 2, § 8 Right to bail-Exceptions**
   A. All persons shall be bailable by sufficient sureties, except that bail may be denied for:
   1. Capital offenses when the proof of guilt is evident, or the presumption thereof is great;
   2. Violent offenses;
   3. Offenses where the maximum sentence maybe life imprisonment or life imprisonment without parole;
   4. Felony offenses where the person charged with the offense has been convicted of two or more felony offenses arising out of different transactions;
   5. Controlled dangerous substances offenses where the maximum sentence may be at least ten (10) years imprisonment.

policy-making power is delegated to the federal government. The Attorney General points out that federal law, for example, requires state agencies to verify presence for state and local public benefits. 8 U.S.C. § 1621. The Attorney General argues that the provisions of H.B.1804 simply acknowledge federal supremacy in the area of immigration regulation and the legislature is deferring to existing or potential federal systems for verifying the citizenship status of individuals.

¶ 17 The United States Supreme Court recently affirmed the Ninth Circuit Court of Appeals which upheld the validity of a similar provision in The Legal Arizona Workers Act of 2007, that revokes or suspends the licenses to do business in the state, of employers who knowingly hire illegal immigrants. *Chamber of Commerce of the United States v. Whiting et al.*, 563 U.S. ——, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011). The Arizona act requires employers to use the federal electronic verification system. The United States Supreme Court held:

> As with any piece of legislation, Congress did indeed seek to strike a balance among a variety of interests when it enacted IRCA. Part of that balance, however, involved allocating authority between the Federal Government and the States. The principle that Congress adopted in doing so was not that the Federal Government can impose large sanctions, and the States only small ones. IRCA instead preserved state authority over a particular category of sanctions—those imposed "through licensing and similar laws."

> Of course Arizona hopes that its law will result in more effective enforcement of the prohibition on employing unauthorized aliens. But in preserving to the States the authority to impose sanctions through licensing laws, Congress did not intend to preserve only those state laws that would have no effect. The balancing process that culminated in IRCA resulted in a ban on hiring unauthorized aliens, and the state law here simply seeks to enforce that ban.

> Implied preemption analysis does not justify a "free-wheeling judicial inquiry into whether a state statute is in tension with federal objectives"; such an endeavor "would undercut the principle that it is Congress rather than the courts that preempts state law." *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 111 [112 S.Ct. 2374, 120 L.Ed.2d 73] (1992)(KENNEDY, J., concurring in part and concurring in judgment); see *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 256 [104 S.Ct. 615, 78 L.Ed.2d 443] (1984). Our precedents "establish that a high threshold must be met if a state law is to be pre-empted (sic) for conflicting with the purposes of a federal Act." *Gade, supra*, at 110 [112 S.Ct. 2374]. That threshold is not met here.

563 U.S. at ——, 131 S.Ct. 1968.

The United States Supreme Court further held:

> Congress's objective in authorizing the development of E–Verify was to ensure reliability in employment authorization verification, combat counterfeiting of identity documents, and protect employee privacy. 8 U.S.C. § 1324a(d)(2) Arizona's requirement that employers operating within its borders use E–Verify in no way obstructs achieving those aims.

563 U.S. at ——, 131 S.Ct. 1968.

¶ 18 In the instant matter, the Oklahoma Statute, like its Arizona counter-part, requires verification of lawful admittance into the United States "through a query to the Law Enforcement Support Center of the United States Department of Homeland Security or other office or agency designated for that purpose by the United States Department of Homeland Security. If lawful immigration status of the prisoner cannot be verified, the keeper of the jail or other officer shall notify the United States Department of Homeland Security." 22 O.S. Supp.2007 § 171.2(B). The United States Supreme Court held that the Arizona Statute has "taken the route least likely to cause tension with federal law." *Chamber of Commerce of the United States v. Whiting et al.*, 563 U.S. ——, ——, 131 S.Ct. 1968, 179 L.Ed.2d 1031

(2011). Such is the case with the statute at hand.

¶ 19 In *Tulsa Co. Deputy Sheriff's F.O.P., Lodge No. 188 v. Board of County Com'rs of Tulsa County,* 2000 OK 2, ¶ 8, 995 P.2d 1124, 1128, in discussing Art. 5, § 1, which provides that the legislative authority of the state shall be invested in a legislature, we stated the well-settled rule that the legislature must not abdicate its responsibility to resolve fundamental policy making. We said:

> This prohibition does not forbid the Legislature from delegating power to implement its statutorily-mandated policies. Even though the Legislature may not delegate the power to make laws, it can delegate the authority to make rules and regulations in the implementation of statutory enactments ... subject to the condition that the statutory scheme "must establish [the legislative] policies and set out definite standards for the exercise of any agency's rule-making power." 2002 OK 2 ¶ 9, 47 P.3d 467.

¶ 20 H.B.1804 does not involve a delegation of the state's policy-making power. It recognizes the cooperation between state and federal law and it recognizes federal power to regulate immigration. The fact that illegal aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially to determine who should or should not be admitted into the country and the conditions under which legal entrants may remain. *DeCanas v. Bica,* 424 U.S. 351, 354–55, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). H.B.1804 does not attempt to *regulate* immigration. We find no violation of the non-delegation doctrine.

## III.

## ESTABLISHMENT OF BUREAU OF IMMIGRATION

¶ 21 The plaintiff maintains that H.B. 1804 establishes a "Bureau of Immigration" in violation of Article 5 § 48, Oklahoma Constitution. Article 5 § 48 provides:

> The legislature shall have no power to appropriate any of the public money for the establishment and maintenance of a Bureau of Immigration in this State.

The plaintiff states that by enacting Article 5, § 48, the framers of Oklahoma's Constitution expressed their intention to leave immigration matters to the federal government because Art. 1, § 1 of Oklahoma's constitution provides that the United States Constitution is the supreme law of the land. The plaintiff points to various sections of the Act that he claims are attributes of a bureau of immigration: the Act makes it a felony to transport, conceal, harbor or shelter from detection an alien within the State of Oklahoma, 21 O.S. § 446; state and local governmental agencies and public schools are authorized to expend public funds to create identification documents, 21 O.S. § 1550.42; jails are obliged to expend public funds to make a reasonable effort to determine the citizenship status of persons committed to jail and to seek verification, if necessary, from the federal government's status verification system, 22 O.S. § 171.2(A)and (B); and it creates a new Document Investigation Unit to operate within the Department of Public Safety. Section 10(A) of H.B.1804 (codified at 74 O.S. § 20j)directs the Attorney General to negotiate the terms of a Memorandum of Understanding between Oklahoma and the federal government pursuant to title 8 U.S.C. § 1357(g) regarding enforcement of federal immigration laws.[6] Thus, plaintiff argues, H.B.1804 goes "far beyond" cooperation with federal immigration officers.

¶ 22 The Attorney General responds that Art. 5, § 48 merely prohibits states from *regulating* immigration. In other words, the State of Oklahoma cannot determine who can enter the country and under what conditions they may remain, but states do have authori-

---

6. Section 10 provides that the Attorney General is authorized and directed to negotiate the terms of a Memorandum of Understanding between the State of Oklahoma and the United States Department of Justice or the United States Department of Homeland Security, as provided by Section 1357(g) of Title 8 of the United States Code concerning the enforcement of federal immigration and custom laws, detention and removals, and investigation in the State of Oklahoma.

ty to act with respect to illegal aliens where such actions mirror federal objectives and further a legitimate state interest. *Plyler v. Doe,* 457 U.S. 202, 225, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). H.B.1804 does not attempt to regulate immigration, which is solely a federal concern, but rather it recognizes that public agencies and persons within the State of Oklahoma were not in compliance with federal immigration law and that it was in the interest of the state to discourage illegal aliens by requiring compliance with federal immigration laws and encouraging cooperation with the federal government. The Attorney General points out that state and local law enforcement officers have the right to assist in the enforcement of federal immigration laws. *United States v. Santana–Garcia,* 264 F.3d 1188, 1193 (10th Cir. 2001).

¶ 23 The trial judge observed that Oklahoma's Constitution was adopted after the federal bureau of immigration was established, so that the framers of Oklahoma's constitution would have been aware of its provisions. The trial court found that, in 1906, Congress passed an Act to Establish a Bureau of Immigration and Naturalization and to Provide for a Uniform Rule for the Naturalization of Aliens throughout the United States, 23 Stat. 596. In 1907 Oklahoma adopted its own constitution, which included Art. 5, § 48. The United States Supreme Court previously had rendered two decisions that advised the states that, except under certain circumstances, they no longer could regulate immigration because it was a matter of federal concern. *Henderson v. Mayor of New York,* 92 U.S. 259, 23 L.Ed. 543 (1875) and *Chy Lung v. Freeman,* 92 U.S. 275, 23 L.Ed. 550 (1875). Thus, it was well established by the time Art. 5, § 48 was adopted that the federal government alone had the power to regulate immigration to determine who could enter the borders and under what conditions they might remain there. The trial court's order included detailed background information about Oklahoma history at the time Art. 5, § 48 was incorporated into our constitution, and the trial judge concluded that the framers intended the section to prohibit appropriation of state money to fund a state bureau of immigration with the purpose of attracting additional people to settle in Oklahoma. However, in the instant case, the State of Oklahoma is not attempting to regulate immigration, rather the State of Oklahoma is using a federal database to confirm the immigration status of persons accused of a crime. This activity is in accord with *Chamber of Commerce of the United States v. Whiting et al.,* 563 U.S. ——, ——, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011), which allowed the State of Arizona to rely solely on the Federal Government's own determination of who is an unauthorized alien, and requires use of the Federal Government's own system for checking alien status.

¶ 24 We agree with the trial judge that H.B.1804 does not create a Bureau of Immigration. The prohibition in Art. 5, § 48 is against the appropriation of public money for establishment of a bureau of immigration. H.B.1804 mandates compliance with federal immigration laws and it seeks to establish cooperation with the federal government. States are permitted to enforce immigration laws. *United States v. Santana–Garcia,* 264 F.3d 1188, 1193 (10th Cir.2001). There is nothing in Art. 5, § 48 that would prevent the State of Oklahoma from enforcing federal immigration laws. House Bill 1804 does not determine who can enter the country (or the State of Oklahoma) or under what terms those who enter the country may remain, nor is there a scheme of deportation in the Act.

### IV.

### SINGLE–SUBJECT RULE

¶ 25 Plaintiff argues that H.B.1804 violates the single-subject rule mandated by Art. 5, § 57 of the Oklahoma Constitution by containing unrelated sections. Article 5, § 57 provides:

Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appro-

priation bills, general revenue bills, and bills adopting a code, digest or revision of statutes . . .

The Attorney General argues that H.B.1804 encourages enforcement of federal immigration law and institutes civil law designed to discourage or prevent illegal aliens from causing fiscal harm to citizens of state and that all provisions are germane to that subject. The Attorney General's brief sets out the common theme or "germaneness" for each section of the Act.

¶ 26 Oklahoma adheres to the germaneness test and the most relevant question under such analysis is whether a voter (or legislator) is able to make a choice without being misled and is not forced to choose between two unrelated provisions contained in one measure. *In re Initiative Petition No. 382*, 2006 OK 45, ¶ 9, 142 P.3d 400, 405. The question is not how *similar* two provisions in a proposed law are, but whether it appears either that the proposal is misleading or that the provisions in the proposal are so unrelated that many of those voting on the law would be faced with an unpalatable all-or-nothing choice. *Id.* The purpose is not to hamper legislation but to prevent the legislature from making a bill "veto proof" by combining two totally unrelated subjects in one bill. *Edmondson v. Pearce*, 2004 OK 23, 91 P.3d 605. This Court recently reaffirmed that we adhere to germaneness as the standard for determining violation of the one-subject requirement. *Fent v. State ex rel. Office of State Finance*, 2008 OK 2, ¶ 23, 184 P.3d 467, 476.

¶ 27 In *Campbell v. White*, 1993 OK 89, 856 P.2d 255, 258, we rejected the broad, expansive theme approach to the single-subject requirement and said that legislation satisfies the one-subject requirement if the provisions are germane, relative and cognate to one another. It is enough that the various provisions are reasonably related to a common theme or purpose. *Id.* In *White* we noted that the Court has rejected a more expansive approach because "the adoption of an approach which would allow unrelated legisla-

tion to be included in a single enactment simply by the skillful drafting of a broad topic would defeat the purpose of the single-subject mandate of Art. 5, § 56—to prevent the execution of piggyback legislation by including it within popular bills." 856 P.2d at 260. If a bill contains multiple provisions, the provisions must reflect a common, closely akin theme or purpose. *Id.*

¶ 28 In *Edmondson v. Pearce*, 2004 OK 23, ¶ 45, 91 P.3d 605, 628–29, we found no violation of the single-subject requirement where Oklahoma's anti-cockfighting Act was unequivocally concerned with one subject and the Act was a unified, germane whole, having as its central purpose the prevention of cruelty to birds by outlawing cockfighting and related activities and providing, after a criminal conviction, for the forfeiture of birds or equipment used in any cockfighting endeavor. It also criminalized being a knowing spectator at a cockfighting event.

¶ 29 Section 2 of H.B.1804 states that it is a compelling public interest of the State of Oklahoma to discourage illegal immigration by requiring all agencies within this state to fully cooperate with federal immigration authorities, and it finds that other measures are necessary to ensure the integrity of various governmental programs and services. The trial judge in the case at bar ruled the stated purpose of the Act can be summarized as having one common theme: to discourage illegal immigration. The trial court concluded that, with a single exception, the provisions of H.B.1804 are germane, relative and cognate to the stated purpose. The single exception was Section 13 (codified at 70 O.S. § 3242(A)(1) and (2)) which authorizes the Oklahoma State Regents for Higher Education to adopt a policy that allows a student to be eligible for resident tuition if the student graduated from a public or private high school in this state and resided in this state with a parent or legal guardian while attending such classes for at least two years prior to graduation. This section would deny such eligibility to a student that passed the GED examination. The trial judge ruled that the severable portion of Section 13 that sought to

amend 70 O.S. Supp.2006 § 3242(A)(1) and (2) to deny resident tuition for higher education to those who successfully have completed the GED examination is unrelated to the common theme of H.B.1804 to discourage illegal immigration. The trial judge ruled that the void provision was severable pursuant to 75 O.S.2001 § 11a(1).[7]

¶ 30 Eleven of the thirteen sections of H.B. 1804 are substantive. In addition to the sections already discussed in this opinion, the Act provides:

—Section 3 (codified at 21 O.S. § 446) makes it a felony to transport, conceal, harbor or shelter any illegal alien in any place within the state;

—Section 4 (codified at 21 O.S. § 1550.42) regulates the creating of identification documents and limits the issuing of such documents to U.S. citizens, nationals and legal permanent resident aliens;

—Section 5 (codified at 22 O.S. § 171.2) requires jailers to make reasonable efforts to identify the citizenship status of those charged with a felony or DUI;

—Section 7 (codified at 25 O.S. § 1313) requires public employers to verify the federal employment status of new employees by use of a Status Verification System and prohibits contractors who do not use the system from contracting with public employers. It also makes it a discriminatory employment practice for an employer to discharge a U.S. citizen or permanent resident alien while retaining an unauthorized alien working in the same job category;

—Section 8 (codified at 56 O.S. § 71) requires every state agency to verify the citizenship status of anyone applying for most types of state, local or federal benefits administered by the agency and makes it unlawful for any agency or political subdivision to provide any state, local or federal benefits to unauthorized aliens.

—Section 9 (codified at 68 O.S. § 2385.32) requires those contracting with individual independent contractors for public service contracts to withhold state income tax at the top marginal rate if the contractor fails to provide verification of the contractor's employment authorization.

—Section 10 (codified at 74 O.S. § 20j) also prohibits persons and agencies from prohibiting or restricting the exchange or maintenance of information regarding the legal status of an individual and creates a cause of action to compel compliance.

—Section 11 (codified at 70 O.S. § 3242.2) limits the eligibility of students not lawfully in the United States for post-secondary benefits of scholarships, financial aid, resident tuition, etc.;

—Section 12 (originally codified at 74 O.S. § 151.2; renumbered as 47 O.S. § 2–106.3) creates a Fraudulent Documents Identification Unit within the Department of Public Safety subject to the availability of funding;

¶ 31 We agree with the trial judge that, but for the severable portion of Section 13, the provisions of H.B.1804 are related to the common theme of discouraging illegal immigration. We agree with the trial judge that the severable portion of Section 13 that sought to amend 70 O.S. Supp.2006 § 3242(A)(1) and (2) so as to deny resident tuition for higher education to those who successfully have completed the GED examination is unrelated to that theme. We agree with the trial judge's determination that the section is severable pursuant to the 75 O.S. § 11a (1) standard. The plaintiff argued that a provision in violation of the single-subject rule cannot be severed, but renders the entire Act invalid. We find that the valid provisions of the Act are not essentially and

---

7. This section states that every act shall be severable, unless the act itself provides that it shall not be severable, unless the court finds that the valid provisions are so essentially and inseparably connected with and dependent upon the void provisions that the court cannot presume that the legislature would have enacted the act without the void portion, or that the remaining valid provisions standing alone are incomplete and incapable of being executed in accordance with legislative intent.

inseparably connected with and dependent on the invalid portion, which would not allow eligibility for resident tuition to those passing the GED examination. The remaining valid provisions constitute the bulk of the Act and are capable of being executed in accordance with legislative intent. We cannot presume that the legislature would not have enacted the Act without the invalid portion. Thus, severing satisfies the factors set out in 75 O.S. § 11a (1).

¶ 32 Additionally, Section 5(C) of H.B.1804 (codified at 22 O.S. § 171.2(C)), which creates a presumption of flight risk, is a special law prohibited by Article 5 § 46 and is thus unconstitutional. We find that this provision is severable pursuant to the 75 O.S. § 11a (1) standard. The standards set forth by the Oklahoma Court of Criminal Appeals in *Brill v. Gurich*, 1998 OK CR 49, 965 P.2d 404, are controlling. The Court of Criminal Appeals held:

. . .

However, as to the non-capital offenses, bail can be denied ONLY when the proof of guilt is evident, or the presumption great, *and* it must be on the grounds that no condition of release would assure the safety of the community or any person.

*Brill*, at ¶ 11

The Court further held:

If bail is denied, the order of the District Court shall include written findings of fact and a statement of the reasons for the detention, supporting the conclusion with clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person, and that proof of guilt is evident or the presumption great.

*Brill*, at ¶ 14

We agree with the trial court's assessment that H.B.1804 does not otherwise violate the Oklahoma constitutional provisions urged by the plaintiff. It is not the place of the Supreme Court or any court to concern itself with a statute's propriety, desirability,

wisdom or its practicality as a working proposition; such questions are plainly and definitely established by fundamental law as functions of the legislative branch of government. *Fent v. Okla. Capitol Improvement Authority*, 1999 OK 64, ¶ 4, 984 P.2d 200, 204. In summary, we affirm the trial court except as to Section 5(C) of H.B.1804 (codified at 22 O.S. § 171.2(C)), which we reverse.

## THE TRIAL COURT IS AFFIRMED IN PART, REVERSED IN PART

¶ 33 CONCUR: COLBERT, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, REIF, COMBS, GURICH, JJ.

¶ 34 DISSENT: TAYLOR (The Plaintiff has failed to overcome the strong presumption that H.B.1804 is constitutional. I would find the Plaintiff has failed to meet his burden on all issues and would therefore find H.B.1804 to be constitutional in all respects.), C.J.