OSCN Found Document:OLIVER v. HOFMEISTER

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 OLIVER v. HOFMEISTER
2016 OK 15
Case Number: 113267
Decided: 02/16/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 15, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

CLARENCE G. OLIVER; EARL GARRISON, AMY VARGUS; DAVID K. PENNINGTON; RAY HICKMAN, KIRBY A. LEHMAN; STACY L. ACORD; ROBERT M. PETERS; RANDALL K. RABURN; MELISSA ABDO; TIM GREEN; and GORDON R. MELSON, Plaintiffs/Appellees,
v.
JOY HOFMEISTER, in her official capacity as State Superintendent of Public Instruction; THE OKLAHOMA STATE DEPARTMENT OF EDUCATION; and THE OKLAHOMA STATE BOARD OF EDUCATION, Defendants/Appellants.

ON APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY,
THE HONORABLE JUDGE BERNARD JONES, PRESIDING 

¶0 The Oklahoma legislature established a scholarship voucher program designed to provide educational choices for children with disabilities who reside within the state. The question presented is whether this program offends the "no aid" clause of the Oklahoma Constitution, Article II, Section 5. We hold that it does not.

DISTRICT COURT'S JUDGMENT IS REVERSED IN PART AND REMANDED WITH DIRECTIONS

Patrick R. Wyrick, Office of the Attorney General, Oklahoma City, Oklahoma, for Appellant
Sarah A. Greenwalt, Office of the Attorney General, Oklahoma City, Oklahoma, for Appellant
Frederick J. Hegenbart, Tulsa, Oklahoma, for Appellees
J. Douglas Mann, Tulsa, Oklahoma, for Appellees
Jerry A. Richardson, Tulsa, Oklahoma, for Appellees
Andrew W. Lester, Edmond, Oklahoma, for Amicus Curiae
Carrie L. Vaughn, Edmond, Oklahoma, for Amicus Curiae
Hossein Farzaneh, Edmond, Oklahoma, for Amicus Curiae
Ellen K. Spiropoulos, Oklahoma City, Oklahoma, for Amicus Curiae
Eddie Foraker, McAlester, Oklahoma, for Amicus Curiae
Richard D. Komer, Arlington, Virginia, for Amicus Curiae
Emily D. Jennings, Tulsa, Oklahoma, for Amicus Curiae
William H. Hickman, Norman, Oklahoma, for Amicus Curiae
Brady R. Henderson, Oklahoma City, Oklahoma, for Amicus Curiae
Ryan Kiesel, Oklahoma City, Oklahoma, for Amicus Curiae
Andrea R. Kunkel, Oklahoma City, Oklahoma, for Amicus Curiae
Tammy T. Carter, Alexandria, Virginia, for Amicus Curiae
Eric S. Baxter, Washington, D.C., for Amicus Curiae
Diana M. Verm, Washington, D.C., for Amicus Curiae
Asma T. Uddin, Washington, D.C., for Amicus Curiae

OPINION

WATT, J.

¶1 Oklahoma taxpayers filed a declaratory judgment action seeking a permanent injunction against Defendants, Joy Hofmeister, the State Superintendent of Public Instruction, the Oklahoma State Department of Education; and the Oklahoma State Board of Education, (the "State") [1] to enjoin the payment of tuition to private sectarian schools alleging the "Lindsey Nicole Henry Scholarships for Students with Disabilities Act," 70 O.S. 2011, §13-101.1 and 70 O.S. 2012 Supp., §13-101.2, (the "Act" or "Scholarship Program") violates several articles of the Oklahoma Constitution. On summary judgment, the trial court determined that the Act violates only Article II, Section 5 of the Oklahoma Constitution and granted an injunction. Defendants appealed, and we retained the case.

¶2 Oklahoma taxpayers, Clarence G. Oliver, Jr., Earl Garrison, Amy Vargus, David K. Pennington, Ray Hickman, Kirby A. Lehman, Stacy L. Acord, Robert M. Peters, Randall K. Raburn, Melissa Abdo, Tim Green and Gordon R. Melson, ("Taxpayers") assert the Act violates the Oklahoma Constitution and is invalid. They challenge the Act, 70 O.S. 2011, §13-101.1, a state funded scholarship provided to students with disabilities to attend a private school of choice instead of the public school they currently attend. Taxpayers seek to enjoin the State permanently from paying any public funds pursuant to the Act.

¶3 Both parties filed for summary judgment. The trial court granted in part and denied in part the parties' motions, finding the Act was constitutional on all challenged grounds except for one. The trial court entered a narrow Order ruling the Act violated the Oklahoma Constitution, Article II, Section 5, only to the extent it authorizes public funds to pay the cost for students to attend private sectarian schools. This provision of the Constitution has been referred to as the "no aid" clause, prohibiting public money from being used for the benefit or support of religion. An injunction was issued to prevent payment to private religious schools, with no impact on the payment to private non-sectarian schools.[2]

¶4 The State appeals and argues for reversal on the basis that: (1) the payment to a sectarian school is permitted because it is for a valid public purpose and in exchange for consideration; and (2) the district court's construction of the Act creates a religiosity distinction violating the U.S. Constitution's freedom of religion clause. [3] Taxpayers urge that Article II, Section 5 is an absolute bar to any payment to a sectarian educational institution, and payment is tantamount to "State" support and control of religion, thereby violating the Oklahoma Constitution. We reverse the district court's decision in part and find the Act does not violate the "no aid" clause. Accordingly, we do not reach the State's argument relating to the religiosity distinction in violation of the U.S. Constitution.

I. STANDARD OF REVIEW

¶5 Plaintiffs carry a very heavy burden of proof to establish their contention that the Act violates Article II, Section 5 of the Oklahoma Constitution. "A legislative act is presumed to be constitutional and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution." Rural Water Sewer and Solid Waste Management v. City of Guthrie, et al., 2010 OK 51 ¶ 15, 253 P.3d 38, 44; citing Kimery v. Pub. Serv. Co. of Okla., 1980 OK 187, ¶ 6, 622 P.2d 1066, 1069 . We are guided by well-established principles of statutory construction and "[e]very presumption is to be indulged in favor of constitutionality of a statute." Thomas v. Henry, 2011 OK 53, ¶ 8, 260 P.3d 1251, 1254. Whenever possible, this Court favors a statutory construction that upholds its constitutionality. Rural Water, supra. at ¶ 15, 253 P.3d at 44, also see, Kimery, supra., at ¶ 6, 622 P.2d at 1069. 

¶6 Summary judgment is proper when there are no disputed material facts and the trial court has only issues of law to consider. EOG Resources Marketing v. Oklahoma State Bd. Of Equalization, 2008 OK 95 ¶ 13, 196 P.3d 511, 518-519. When the trial court's grant of summary judgment involves only legal questions, the standard of review is de novo. Id.

LEGAL ANALYSIS

Lindsey Nicole Henry Scholarship Act

¶7 Oklahoma public school districts are required to provide education and related services to all children with disabilities. 70 O.S. 2011 §13-101. [4] Following a statute amendment in 1993, each school district has had the option to provide these services or delegate this responsibility and enter into a written agreement with a private institution to provide the mandated services. [5] Id. Thus, for more than twenty years, each school district has had the statutory authority to decide whether it would provide this education or enter into a contract with a private institution to provide the required educational needs to students with disabilities. When the Lindsey Nicole Henry Scholarship Act was enacted in 2010, the legislature simply allowed parents and legal guardians the same right that school districts already enjoyed, the choice to use state funds to contract with an approved private institution for special education services. 70 O.S. 2012 Supp., §13-101.2.

¶8 The Act provides money through scholarships to eligible students to offset tuition costs at participating private schools. 70 O.S. 2012 Supp., §13-101.2 (A). Participation in the scholarship program is entirely voluntary with respect to eligible students and their families. Each family independently decides without influence from the State whether to enroll their child in the scholarship program or continue with specialized services at their current public school.

¶9 To qualify for the scholarship, the student must meet specified eligibility requirements and the student's parent or legal guardian must follow the application process. In general, to be "eligible", the student must: (1) be a student with a "disability" as defined by 70 O.S. 2011 §13-101; (2) have attended the prior school year at a public school; and (3) have an individualized educational plan ("IEP") in place prior to the request for a scholarship. 70 O.S. 2012 Supp., §13-101.2 (A). The school district must have reported the student as having been enrolled during the preceding school year. 70 O.S. 2012 Supp., §13-101.2 (B) (1).

¶10 The parent or legal guardian has the option to submit an application to the Department requesting the scholarship. Before application, the student must be accepted by an approved private school selected by the parent or legal guardian. 70 O.S. 2012 Supp., §13-101.2 (A). If the Department determines the student meets the eligibility requirements, the scholarship will be awarded and remain in effect until such time as the child returns to a public school. 70 O.S. 2012 Supp., §13-101.2 (B). Acceptance of the scholarship has the same effect as a parental revocation of the federally guaranteed rights for specialized education services. 70 O.S. 2012 Supp., §13-101.2 (F). The public school is then relieved of the associated state and federal mandates to provide specialized educational services and the associated financial costs.

¶11 Any private school, whether sectarian or non-sectarian, may participate in the scholarship program and accept eligible students so long as the school meets statewide educational standards, demonstrates fiscal soundness and meets health and safety requirements. 70 O.S. 2012 Supp., §13-101.2 (H). A school becomes "approved" by fulfilling the outlined criteria. The Act is void of any preference between a sectarian or non-sectarian private school. We find there is no influence being exerted by the State for any sectarian purpose with respect to whether a private school satisfies these requirements.

¶12 Although the Act is religion neutral, Taxpayers urge there is constitutional significance because there are more students attending sectarian private schools than non-sectarian. We disagree.

¶13 This same concern was raised and dismissed by the U.S. Supreme Court in an earlier school voucher case finding "the constitutionality of a neutral educational aid program simply does not turn on whether and why, in a particular area, at a particular time, most private schools are religious, or most recipients choose to use the aid at a religious school." Zelman v. Simmons-Harris, et al., 536 U.S.639, 641, 122 S.Ct. 2460, 2462 153 L.Ed.2d 604. [6] The U.S. Supreme Court emphasized the important factors are the neutrality of the scholarship program and private choice exercised by the families instead of the number of students attending religious schools. [7] When the parents and not the government are the ones determining which private school offers the best learning environment for their child, the circuit between government and religion is broken. Zelman, supra. 536 US. at 652, 122 S.Ct. at 2467.

¶14 In Oklahoma, the Department funds the scholarship by issuing an individual warrant payable to the parent or legal guardian; it is not payable directly to the private school.70 O.S. 2012 Supp., §13-101.2 (J) (4). The parent or legal guardian then endorses the payment warrant to the independently chosen private school providing the contracted educational services. 70 O.S. 2012 Supp.,§13-101.2 (I)(1)(e). Scholarship funds deposited to a private sectarian school occur only as the result of the private independent choice by the parent or legal guardian. The Department has no influence on which private school the parent chooses, or the subsequent endorsement of the payment warrant. The Department never directs whether the scholarship payment is made to a private sectarian or non-sectarian school.

¶15 We are also persuaded by the fact that all "State" scholarship funds are paid to the parent or legal guardian and not to the private school. It is the parent who then directs payment by endorsement to the independently chosen private school. Any scholarship funds deposited to a private sectarian school occur as the sole result of the parent's independent selection free from State control or direction. As noted in Zelman, this independence of choice by the parent breaks the circuit between government and religion.

"No Aid" Clause and Oklahoma Case History 

¶16 Taxpayers urge that the purpose of the "no funding" clause of the Oklahoma Constitution is to provide a guarantee of religious liberty. They further reason that any scholarship payment to a private sectarian school is tantamount to State support of a sectarian institution.

¶17 The "no aid" clause of the Oklahoma Constitution, Article II, §5, provides:

No public money or property shall ever be appropriated, applied, donated, or used, directly or indirectly, for the use, benefit, or support of any sect, church, denomination, or system of religion, or for the use, benefit or support of any priest, minister or other religious teacher or dignitary, or sectarian institution as such. (Emphasis added)

We have determined that sectarian institution includes parochial and sectarian schools. Gurney v. Ferguson, 1941 OK 397 ¶ 0, 122 P.2d 1002. Thus, the question we must resolve is whether under the conditions outlined in the Act, does the deposit of scholarship funds to a private sectarian school constitute "public money" being "applied, donated, or used, directly or indirectly, for the use, benefit, or support" of a sectarian institution. Factors that impact our analysis include: (1) voluntary participation by families in scholarship program; (2) genuine independent choice by parent or legal guardian in selecting sectarian or non-sectarian private school; (3) payment warrant issued to parent or legal guardian; (4) parent endorses payment to independently chosen private school; (5) Act is religion neutral with respect to criteria to become an approved school for scholarship program; (6) each public school district has the option to contract with a private school to provide mandated special educational services instead of providing services in the district; (7) acceptance of the scholarship under the Act serves as parental revocation of all federally guaranteed rights due to children who qualify for services under 70 O.S. 2012 Supp., §13-101.2 (F); and (8) the district public school is relieved of its obligation to provide educational services to the child with disabilities as long as the child utilizes the scholarship.

¶18 Although this is a case of first impression before us, we will begin by reviewing early cases dealing with the "no aid" clause. We previously determined that the use of public funds and public property to provide gratuitous transportation to children attending a private parochial school is an improper gift of public funds to a sectarian institution, violating Article II, §5. Gurney, supra., Board of Educ., Ind. Sch. Dist. No. 52 v. Antone, 1963 OK 165, 384 P.2d 911. We reasoned that when a public school district provides bus transportation to the children attending the district's school, it constitutes direct aid to the school. Gurney, supra., 1941 OK 397 at ¶12. Likewise, when those same public school buses are used to provide free transportation to children attending a sectarian school, the public school is providing direct aid to the sectarian school. The use of public property to aid a sectarian institution is prohibited. Id.

¶19 In contrast, public money paid to a sectarian institution in exchange for the housing and care of orphans and thereby discharging the State's duty to provide for the needy, is not a violation of Article II, Section 5. Murrow Indian Orphans Home v. Childers, 1946 OK 187, ¶9, 171 P.2d 600, 197 Okla. 249, 250. [8] We clarified that as long as the services being provided "involve the element of substantial return to the state and do not amount to a gift, donation, or appropriation to the institution having no relevancy to the affairs of the state, there is no constitutional provision offended." Murrow, Id. The Court noted that the downfall of Gurney was the use of public taxes to provide bus service to a sectarian institution for which no corresponding value was received by the state. Id. 

¶20 The purpose of the "no aid" clause is to support the separation of church and state and to ensure that churches are free from state control and have the ability to function and operate separately from the state. Gurney, supra., 1941 OK 397 at ¶16. The concern is not the exposure to religious influence. Rather "it is the adoption of sectarian principles or the monetary support of one or several or all sects that the state must not do." Murrow,1946 OK 187 supra. at ¶9.

¶21 The Act provides a scholarship to a limited group of eligible students with disabilities. Participation in the scholarship program is strictly voluntary by the families and eligible students. The families who opt to take advantage of the scholarship independently choose which private school is best for the eligible student. Approved schools are determined without regard to religious affiliation and are based on statewide educational standards, health and safety regulations. The scholarship is paid to the parent who then endorses payment to the private school. The scholarship program does not directly fund religious activities because no funds are dispersed to any private sectarian school until there is a private independent selection by the parents or legal guardian of an eligible student. 70 O.S. 2012 Supp., §13-101.2 (B). Any benefit to a participating sectarian school arises solely from the private and independent choice of the parent or legal guardian of the child and not from any decree from the State.

¶22 Because the parent receives and directs the funds to the private school, sectarian or non-sectarian, we are satisfied that the State is not actively involved in the adoption of sectarian principles or directing monetary support to a sectarian institution through this scholarship. When the scholarship payment is directed to a sectarian private school it is at the sole and independent choice and direction of the parent and not the State. The scholarship funded through the Act has no bearing on state control of churches. We are convinced that the scholarships funded by the Act have no adverse impact on the ability of churches to act independently of state control and to operate separately from the state.

¶23 Murrow involved payment due under a contract entered into between the State and the sectarian orphanage. Taxpayers urge in the instant matter that the reasoning of Murrow is inapplicable in this matter as the payment made by the Department to the various private schools is awarded as a scholarship and not paid as a result of a signed contract. In Murrow, the State was fulfilling its duty to provide care for the needy. Similarly, each public school district can fulfill its state mandated duty to provide educational services to children by: (1) delivering services through its own school district (2) entering into approved arrangement with another public school district; (3) entering into a written agreement with an eligible private institution in the public school district to provide educational services; or (4) pursuant to the Act, providing a scholarship to eligible students to offset tuition costs to attend a private school. 70 O.S. 2011 § 13-101; 70 O.S. 2011 § 13-101.1 and 70 O.S. 2012 Supp. § 13-101.2.

¶24 The problem in Gurney is that public money was spent providing a service to the sectarian school without any value being given back to the State. Murrow, supra., 1946 OK 187 at ¶5. The determinative factor is linked to whether the service being provided by the sectarian agency "involve the substantial return to the state and do not amount to a gift, donation, or appropriation to the institution having no relevancy to the affairs of the state...." Murrow, supra. at ¶9 In such case, there is no constitutional provision offended. Id. Acceptance of the scholarship by the parent is deemed a revocation of the federally guaranteed rights for students who meet the requirements for a disability. This revocation relieves the school district of its obligation to the student to provide special education services mandated by the state and federal governments. Accordingly, we find the public school, the State, receives a substantial benefit, being relieved of the duty to provide special educational services to the scholarship recipient.

¶25 In Murrow we made the point that "[i]t is not the exposure to religious influence that is to be avoided; it is the adoption of sectarian principles or the monetary support of one or several or all sects that the state must not do." Murrow, supra., 1946 OK 187 at ¶7.

¶26 We are persuaded that the Act is completely neutral with regard to religion and that any funds deposited to a sectarian school occur as the sole result of the parent's independent decision completely free from state influence. The scholarship payment warrant is made to the parent who then endorses funds to the private school the parent determined was best suited to provide special education services to their child with a disability. The Act is void of any suggestion or inference to favor religion or any particular sect. Private schools are chosen by the parent from private schools that are approved by meeting objective state educational standards irrespective of religious preference. The parent, not the State, determines where the scholarship funds will be applied. We are satisfied that under this scenario, the State is not adopting sectarian principles or providing monetary support of any particular sect.

CONCLUSION

¶27 We are guided by our long standing jurisprudence that a legislative act is presumed to be constitutional and "will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution." Rural Water, supra. 2010 OK 51 at ¶15. We hold the Oklahoma "Lindsey Nicole Henry Scholarships for Students with Disabilities Act", a school voucher program limited to provide educational choices for children with disabilities, does not violate Article II, Section 5 of the Oklahoma Constitution. The portion of the trial court's judgment which granted summary judgment to Taxpayers and denied summary judgment to the State with respect to finding the Act violated Article II, Section 5 of the Oklahoma Constitution is reversed. This case is reversed in part and remanded to the district court with directions to enter judgment in favor of the State in accordance with this Opinion. The trial court is also directed to vacate the stay pending appeal.

¶28 DISTRICT COURT'S JUDGMENT IS REVERSED IN PART AND REMANDED WITH DIRECTIONS

REIF, C.J., COMBS, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, TAYLOR (by separate writing), COLBERT, GURICH, JJ. - CONCUR

FOOTNOTES

[1] Plaintiffs named as Defendants, Janet Barresi, in her official capacity as State Superintendent of Public Instruction, The Oklahoma State Department of Education, and The Oklahoma State Board of Education. A Notice of Automatic Substitution of Party Pursuant to 12 O.S. 2011 §2025, was filed seeking automatic substitution of Joy Hofmeister, in her official capacity as State Superintendent of Public Instruction. We entered an Order on January 14, 2015, officially changing the style to reflect this substitution.

[2] The district court issued a stay of its order pending resolution on appeal.

[3] See, Colorado Christian University v. Weaver, 534 F.3d 1245 (2008); Little Sisters of the Poor Home for the Aged v. Burwell, 794 F.3d 1151, 1201, "Colorado Christian prohibit[s] preferences based on denominations (e.g. Catholic, Jewish, Islamic, etc.) and religiosity (e.g., pervasively sectarian, moderately sectarian, non-sectarian, etc.)...

[4] This statute provides in part as follows: ".....It shall be the duty of each school district to provide special education and related services for all children with disabilities as herein defined who reside in that school district in accordance with the Individuals with Disabilities Education Act (IDEA), P.L. No. 105-17. This duty may be satisfied by:

1. The district providing special education for such children;

2. The district joining in a cooperative program with another district or districts to provide special education for such children;

3. The district joining in a written agreement with a private or public institution, licensed residential child care and treatment facility or day treatment facility within such district to provide special education for children who are deaf or hard-of-hearing, children who are blind or partially blind or other eligible children with disabilities; or

4. Transferring eligible children and youth with disabilities to other school districts which accept them and provide special education and related services for such children, with the district in which the child resides paying tuition therefor as herinafter provided. For those students who transfer pursuant to the provisions of the Education Open transfer Act, the receiving school district shall assume all responsibility for education and shall count the student for federal and state funding purposes according to the provisions of subsection B of Section 13-103 of this title. (Emphasis added).

[5] Prior to the 1993 amendment, the statute provided in pertinent part:

3. The district joining in a cooperative program with a private or public institution within such district to provide special education for children who are deaf or hard-of-hearing, or for children who are blind or partially blind; or ......

Following the 1993 amendment, the statute now provides in pertinent part:

3. The district joining in a written agreement with a private or public institution, licensed residential child care and treatment facility or day treatment facility within such district to provide special education for children who are deaf or hard-of-hearing, children who are blind or partial blind or other eligible children with disabilities. (Emphasis added).

[6] The U.S. Supreme Court in Zelman was presented with whether the voucher program violated the Establishment clause of the U.S. Constitution. The case before us relates not to a federal constitutional question, but rather whether the scholarship program funded by the Act violates the Oklahoma constitution's, "no aid" clause. Although the constitutional provision at issue is different, the analysis provides guidance.

[7] Also see, Mueller v. Allen, 463 U.S. 388, 103 S.Ct. 3061, 77 L.Ed.2d 721, no constitutional significance should attach even where 96% of scholarship recipients have enrolled in religious schools, as a result of a citizen's private independent choice and the scholarship program is neutral with respect to religion.

[8] At issue in Murrow, is whether a payment by the State to a sectarian orphanage for care provided to dependent orphan children, in accordance with the terms of a contract, violates Article II, Section 5 of the Oklahoma Constitution as the payment of public money to a sectarian institution.

 

 

TAYLOR, J., concurring:

¶1 I agree that two provisions of the Lindsey Nicole Henry Scholarships for Students with Disabilities Act (the Act), 70 O.S.2011, § 13-101.1 & 70 O.S.Supp. 2012, § 13-101.2, do not run afoul of Article II, Section 5 of the Oklahoma Constitution.

¶2 This Court has spoken directly on the issue now before it in Murrow Indian Orphans Home v. Childers, 1946 OK 187, 171 P.2d 600. Murrow did not hinge on whether the payment was made directly or indirectly to the religious institution. The plaintiffs in Murrow questioned payments made to a Baptist supported orphanage for the housing and care of dependent children of this state. Id. ¶¶ 2, 5. The care of these needy children was mandated by this State's Constitution. Id. ¶ 6. The orphanage's yearly cost per child was $225 to $250, and the state's payment to the orphanage per child was $70 under a contract with the orphanage. Id. ¶ 2. This Court determined that "so long as [the payments] involve the element of substantial return to the state and do not amount to a gift, donation, or appropriation to the institution having no relevancy to the affairs of the state," they do not violate Article II, Section 5 of Oklahoma's Constitution. In Murrow, the orphanage did not benefit in that it expended more on a child's care than it received from the state coffers. We reiterated in Burkhardt v. City of Enid, 1989 OK 45, ¶ 15, 771 P.2d 608, 612, that the key factor in determining an Article II, Section 5 violation was where the governmental entity making a payment to a religious institution receive a substantial benefit in return.

¶3 Here, the services for special needs children is mandated by the federal government. The Act is religion neutral--it treats religious private schools the same as non-religious private schools. The Plaintiffs had the burden to show that the religious schools benefitted and that the state did not receive a substantial benefit, and they failed to present any evidence. The facts here are no different than the state making payments to a private institution, although religious, to care for needy, state-dependent children when those payments fail to cover the full cost of their care.

¶4 The facts here are no different than the State sending inmates of a state prison to a church-affiliated hospital for medical care. The facts here are no different than a state Medicaid recipient being treated at a church-affiliated clinic. The facts are no different than a church-owned construction company building a road or a bridge for the State. None of these examples have anything to do with religion. They all are simple contract situations. A fee for service in which the State contracts required services to a non-governmental entity. It has nothing to do with religion. It has everything to do with fee for service and a mutual benefit contract.

¶5 Under the Lindsey Nicole Henry Scholarships, the State is simply contracting with private schools to perform a service (education of children with special needs) for a fee. The State receives great benefit from this arrangement that has nothing to do with religion. It has to do with education and caring for children with special needs, whose education is the responsibility of the State.

¶6 It should be noted that the two private schools who are the largest recipients of these scholarship dollars have no religious affiliation. Andrea Eger, Public Money to Private Schools: Legal Limbo Persists for Scholarship Students with Disabilities, Tulsa World, Oct. 18, 2015, available at http://www.tulsaworld.com/news/education/public-money-to-private-schools-legal-limbo-persists-for-scholarship/article_ac864254-5dbb-5206-b9dc-1f2407797352.html. The Tulsa World article also reported that these scholarships do not cover the full cost of the private school tuition-further evidence of benefit to the state. Id.

¶7 The fact that the scholarship payments are made to the parents and then passed on by endorsing funds over to the private schools is irrelevant. It is still a fee-for-service arrangement that benefits the student, parents, and the State. The State has determined that it is economically efficient to contract its responsibility to these children with special needs to private schools.

¶8 There is a presumption that statutes are constitutional and that those challenging a statute as unconstitutional have a heavy burden. Liddell v. Heavner, 2008 OK 6, ¶ 16, 180 P.3d 1191, 1199-1200. The Plaintiffs failed to put forth evidence that the state did not receive a substantial benefit from the scholarship, the only factor this Court has articulated in scrutinizing legislation as violative of Article II, Section 5.

¶9 The Lindsey Nicole Henry Scholarships are simply fee-for-service contracts for a very narrowly defined group of children with disabilities. There is nothing unconstitutional about this under Article II, Section 5. The benefit of the arrangement is primarily to the State. There is clearly substantial benefit to the State of Oklahoma. Burkhardt, 1989 OK 45, ¶ 15, 771 P.2d at 612.

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 45, 771 P.2d 608, 60 OBJ 785, Burkhardt v. City of Enid
Discussed at Length
 1941 OK 397, 122 P.2d 1002, 190 Okla. 254, GURNEY v. FERGUSON
Discussed at Length
 1946 OK 187, 171 P.2d 600, 197 Okla. 249, MURROW INDIAN ORPHANS HOME v. CHILDERS
Discussed at Length
 1963 OK 165, 384 P.2d 911, BOARD OF EDUC., IND. SCH. DIST. NO. 52 v. ANTONE
Discussed
 2008 OK 6, 180 P.3d 1191, LIDDELL v. HEAVNER
Discussed
 2008 OK 95, 196 P.3d 511, EOG RESOURCES MARKETING v. OKLAHOMA STATE BD. OF EQUALIZATION
Discussed
 2010 OK 51, 253 P.3d 38, RURAL WATER SEWER AND SOLID WASTE MANAGEMENT v. CITY OF GUTHRIE
Discussed at Length
 2011 OK 53, 260 P.3d 1251, THOMAS v. HENRY
Discussed
 1980 OK 187, 622 P.2d 1066, Kimery v. Public Service Co. of Oklahoma
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2025, Substitution of Parties
Cited
Title 70. Schools
 Cite
Name
Level

 70 O.S. 13-101.1, Short Title
Discussed at Length
 70 O.S. 13-101.2, Lindsey Nicole Henry Scholarships for Students with Disabilities Program
Discussed at Length
 70 O.S. 13-101, Special Services for Exceptional Children - Cooperative Provide Special Education
Discussed at Length